975 S.W.2d 656 (1998)
In the Matter of L.R.
No. 04-97-01061-CV.
Court of Appeals of Texas, San Antonio.
June 30, 1998.
*657 Vincent D. Callahan, San Antonio, for Appellant.
Angela Moore, Assistant Criminal District Attorney, San Antonio, for Appellee.
Before LÓPEZ, STONE and DUNCAN, JJ.
STONE, Justice.
L.R. appeals his conviction for the offense of possession of less than 28 grams of cocaine in violation of the Texas Controlled Substances Act. In one point of error, L.R. challenges the trial court's denial of his motion to suppress, arguing the cocaine was obtained pursuant to an illegal search and seizure under Article I, section 9 of the Texas Constitution. Finding that the seizure of cocaine was legal under the "plain feel" doctrine, we affirm the trial court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND
The legality of the seizure was raised both at a pre-trial suppression hearing and during a bench trial. Aside from slight variations, the facts at the suppression hearing were the same facts testified to at trial.
On June 1, 1994, at approximately 3:45 a.m., Park Ranger Raul Mendiola heard gun shots fired while patrolling in Brackenridge Park. He notified his dispatcher and began checking the immediate vicinity when he observed a Mercury Bobcat being driven without its headlights. Mendiola followed the Mercury, which by then was operating with its lights. The vehicle approached the intersection of Brackenridge and Wilderness, ignored a posted stop sign, and turned left onto Wilderness Street. Mendiola activated his overhead lights in an attempt to stop the vehicle. The Mercury continued through the park without regard to Mendiola, who by then was intermittently activating his siren. Mendiola radioed the dispatcher that the suspects were not stopping. The Mercury reached the access road to Highway 281 when a patrol car driven by Sergeant Guerrero of the San Antonio Police Department arrived on the scene. The presence of Guerrero's car apparently persuaded the driver of the Mercury to submit to the pursuing officers. By this time, Park Ranger Daniel Martinez arrived as back-up in response to the reported gunshots. Three individuals were in the vehicle. Each officer conducted a pat-down search on one of the individuals. Martinez, while conducting a pat-down search on L.R., found cocaine in L.R.'s front right pocket.

STANDARD OF REVIEW
In Guzman v. State, 955 S.W.2d 85 (Tex.Crim.App.1997), the Court of Criminal Appeals clarified the appropriate deference that appellate courts should afford to trial court rulings. Guzman, 955 S.W.2d at 89. Specifically, the court instructed that an appellate court should defer to a trial court's *658 determination of historical facts supported by the record, especially when the trial court's fact findings are based on an evaluation of credibility and demeanor. Id. Appellate courts should afford the same deference to a trial court's rulings on the application of law to fact questions, if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. Id. However, appellate courts may review de novo "mixed questions of law and fact" not falling within this category. Id. The central issue in the instant case, whether the seizure of the cocaine exceeded the permissible scope of the weapons search, is a mixed question of law and fact. Because the resolution of this question involved evaluating the credibility and demeanor of the witnesses, we review the record applying a deferential abuse of discretion standard of review. See id. We still review the evidence presented at the suppression hearing in the light most favorable to the trial court's ruling. Villarreal v. State, 935 S.W.2d 134, 138 (Tex.Crim.App. 1996). In a suppression hearing, the trial court is the sole trier of fact and the judge of the credibility of the witnesses and the weight to be given their testimony. Villarreal v. State, 935 S.W.2d 134, 138 (Tex.Crim. App.1996). Thus, the trial court is free to believe any or all of a witness's testimony. Allridge v. State, 850 S.W.2d 471, 492 (Tex. Crim.App.1991), cert. denied, 510 U.S. 831, 114 S.Ct. 101, 126 L.Ed.2d 68 (1993). When, as in the instant case, the legality of the seizure is re-litigated at trial, consideration of relevant trial testimony is appropriate in our review. Rachal v. State, 917 S.W.2d 799, 809 (Tex.Crim.App.), cert. denied, ___ U.S. ___, 117 S.Ct. 614, 136 L.Ed.2d 539 (1996).

LEGALITY OF SEIZURE
L.R. argues the trial court abused its discretion in denying his motion to suppress because Martinez exceeded the permissible scope of a weapons search when he manipulated his pocket in order to determine the identity of contraband in his pocket. L.R. relies chiefly upon Flores v. State, 824 S.W.2d 704 (Tex.App.Corpus Christi 1992, pet. ref'd) and Brown v. State, 830 S.W.2d 171 (Tex.App.Dallas 1992, pet. ref'd) in support of his position. In reply, the State contends the seizure of the cocaine was proper under the "plain feel" doctrine exception recognized in the context of a Terry search. See Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993).
Under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), an investigatory stop is justified if a police officer, based upon specific and articulable facts, reasonably concludes the detained person may be associated with criminal activity. Terry, 392 U.S. at 21, 88 S.Ct. 1868; see Davis v. State, 829 S.W.2d 218, 219 (Tex.Crim.App. 1992); State v. Simmang, 945 S.W.2d 219, 222 (Tex.App.San Antonio 1997, no pet.). Terry also authorizes a pat-down search of a person for weapons when the officer is justified in believing that the detainee may be armed and presently dangerous. Terry, 392 U.S. at 29-30, 88 S.Ct. 1868; Davis, 829 S.W.2d at 221. The purpose of a Terry search is to neutralize a potentially volatile situation and allow an officer to investigate without fear of violence; it is not meant to discover evidence of a crime. Wood v. State, 515 S.W.2d 300, 306 (Tex.Crim.App.1974). A search which continues after the officer determines the detainee is not armed exceeds the permissible bounds of Terry. Lippert v. State, 664 S.W.2d 712, 721 (Tex.Crim.App. 1984). In the instant case, it is clear that both the investigatory stop and the subsequent Terry search were constitutionally permissible. The vehicle in which L.R. was riding was in the vicinity of gun shots, and it fled the area in spite of police commands to stop. Further, the officers were justified in believing that a weapons search was necessary to protect their safety.
In Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), the United States Supreme Court expanded the permissible bounds of a Terry search to include the discovery of contraband which the officer inadvertently, but "immediately," detects through the sense of touch. Specifically, the court stated:
If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent there has been no *659 invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain view context.
Dickerson, 508 U.S. at 375-76, 113 S.Ct. 2130. There, after recognizing the "plain feel" exception, the Dickerson Court concluded the seizure was constitutionally invalid because the officer did not immediately recognize a lump he felt in the suspect's pocket to be cocaine. Id. at 377-78, 113 S.Ct. 2130. It was only through continued exploration of the suspect's pocket that the officer was able to determine the illegal nature of the lump. Thus, in order for a search to pass constitutional muster under Dickerson, there must be some evidence upon which to conclude that the incriminating nature of the contraband was immediately apparent to the searching officer. Id.
At the suppression hearing in the instant case, Martinez described his pat-down search in the following way:
Q: What did you do [once you arrived at the scene to assist Officer Mendiola]?
A: The reason why I had to cover Officer Mendiola is because he was attempting to stop a vehicle that was in a location of shots being fired in one of our parks. That is the reason why I in turn patted down [L.R.] was to possibly obtain any type of weapons or any other type of contraband due to the fact shots had been fired in that location.
* * * *
Q: Did you at some point in your investigation and the arrest of [L.R.], did you search him?
A: Yes.
Q: What were you looking for?
A: Either weapons or some type of contraband, from my experience.
Q: What do you mean about contraband and your experience.
* * * *
A: In ways where suspects carry contraband and the ways they do carry contraband. And it was my experience as to when I was conducting a pat down I felt what I believed to be contraband in the form of a plastic baggie.
* * * *
A: I retrieved two very small baggies of what I believed to be cocaine at that time. At the bench trial, Martinez testified in the following manner on cross-examination:
A: You begin this pat down for weapons, is that correct?
Q: Yes.
* * * *
Q: That is what you were looking for?
A: Yes.
Q: And you did not find any weapons on this young man?
A: No.
* * * *
Q: [When you were conducting your pat down search], you didn't go like this, squeeze or anything?
A: Yes, I did.
Q: And that is when you said you got something out of the pocket?
A: I retrieved the substance.
Based upon the foregoing evidence, we find that the trial court did not abuse its discretion in concluding that the cocaine's seizure fell within the purview of the "plain feel" doctrine as articulated in Dickerson. The record supports the conclusion that Martinez immediately recognized the incriminating nature of the cellophane baggie when he patted down L.R.'s pockets. Martinez testified that based upon his training and experience, he knew that illicit substances were commonly wrapped in cellophane packaging. Further, the cross-examination testimony from trial could also support the trial court's conclusion that identity of the contraband was ascertained before Martinez further manipulated the object. See e.g., Garcia v. State, 967 S.W.2d 902, 906-07 (Tex.App. Austin 1998, no pet. h.) (validating seizure of crack pipe where officer touched object twice before seizing it on basis that officer did not manipulate appellant's pocket and its contents in order to determine identity of crack pipe); Strickland v. State, 923 S.W.2d 617, *660 621-22 (Tex.App.Houston [1st Dist.] 1995, no pet.) (upholding seizure of crack pipe even though officer moved his fingers across it, reasoning that officer did not extensively manipulate defendant's pocket); Graham v. State, 893 S.W.2d 4, 8 (Tex.App.Dallas 1994, no pet.) (holding that seizure did not fall within plain feel doctrine because officer had to pinch and rub defendant's pocket in order to identify capsules whose incriminating character was not immediately apparent). Here, the trial court was free to believe that Martinez initially recognized the object as a drug packaging and only pinched or squeezed it as he was retrieving it from L.R.'s pocket. Accordingly, we find that the trial court did not abuse its discretion in denying L.R.'s motion to suppress.
The judgment of the trial court is affirmed.