**Bonnie Jalaane RAY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–04–00030–CR.**

Court of Appeals of Texas, Texarkana.

Submitted July 13, 2004.

Decided Oct. 19, 2004.

Tim Cone, Gilmer, for appellant.

Ray Bowman, Asst. Dist. Atty., Longview, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice ROSS.

Bonnie Jalaane Ray was convicted by a Gregg County jury for possession of a controlled substance, cocaine, with intent to deliver. She was sentenced, in accordance with the jury's verdict, to twenty years' imprisonment and a $2,000.00 fine. Her appeal raises three points of error, alleging: (1) the trial court erred in overruling her motion to suppress drug paraphernalia found in her purse; (2) the evidence is legally and factually insufficient; and (3) the trial court erred in limiting the testimony of one of her witnesses. We affirm the trial court's judgment.

The State's case-in-chief began with Longview police officer Kurt Rhodes, who testified that, on the evening of November 24, 2002, he observed a gray Lexus vehicle traveling on a public road with the driver's side seat belt hanging out the door. Rhodes stopped the vehicle, observing that there were two occupants. On contacting the driver, Richard George, the officer found that George did not possess a valid driver's license and that he had outstanding warrants for his arrest. George was taken into custody. The officer then identified Ray as the front seat passenger and ascertained that she likewise did not have a valid driver's license and that she, too, had outstanding warrants for her arrest. Ray was also taken into custody.

Rhodes then conducted a search of the Lexus. In the floor area of the passenger's seat where Ray had been sitting was a purse, which Ray acknowledged was hers. Inside that purse, Rhodes found a razor blade, a short straw, a small amount of baking soda, and a glass pipe with a "Brillo pad" stuck in it.[1] Rhodes recognized the pipe as one used to smoke crack cocaine. Rhodes next found, stuck between the passenger's seat, where Ray had been sitting, and the center console, a small Tylenol bottle with eight rocks of what Rhodes suspected to be crack cocaine. The eight rocks eventually were shown to contain 1.33 grams of cocaine. Stuck between the driver's seat and the center console was a plastic bag containing another glass pipe, with some charred pieces of Brillo pad stuffed in it, which Rhodes also suspected of being used for smoking crack cocaine.

The State also presented the testimony of a local drug task force officer, Brian Ray (no relation to the appellant), who stated it was common for drug dealers to carry crack cocaine in rock form in small bottles or containers. Officer Ray testified the amount of cocaine found in the seat next to Ray, with a street value of about $160.00, was consistent with a person dealing or selling drugs, as opposed to having such an amount for personal use. According to Officer Ray, a razor blade and baking powder are common materials possessed by persons dealing cocaine; the razor blade being used to cut larger pieces of crack cocaine into smaller pieces, and the baking powder being used to bulk up the cocaine.

In the defense case-in-chief, Ray called Owen Williams, a friend of Ray. Williams testified he and Ray were at his house the night of November 24, 2002, watching television, when George arrived. Williams testified that he had known George for some time and that George made money through working on cars and selling drugs. The State objected to Williams' testimony regarding George's history of selling drugs. The jury was excused and, on a proffer of evidence by Ray, Williams testified that, on this night when George came to his home, George gave him (Williams) a rock of cocaine from a bottle that appeared to be the same container, or type of container, as the bottle introduced into evidence as having been found stuck in the passenger's seat, next to Ray. After receiving this rock of cocaine, Williams thought the bottle had "eight to ten" rocks left in it. Williams further testified George had a large amount of cash with him. On cross-examination, Williams testified he received this rock of cocaine from George in Ray's presence. The trial court excluded the proffered testimony, and the jury was returned. Williams then testified that, on

---

1. Officer Brian Ray testified that a scouring pad can be stuffed into one end of a pipe to hold the cocaine in place.

the night of the alleged offense, he did not see Ray in possession of the bottle with the rocks of cocaine.

Ray then testified and admitted she had a criminal history, including two felony convictions for possession of cocaine, one state jail felony conviction for delivery of cocaine, two misdemeanor convictions for prostitution, and one misdemeanor conviction for theft of service. She further testified that, on the night in question, she had been at Williams' house watching television when George arrived. She had met George previously, but did not immediately recognize him. She wanted to get something to eat from McDonald's, but did not have much money, and when George offered to take her to eat, she accepted. She said she "knew what [George] had," and admitted to using crack cocaine earlier that day. She said the razor blade in her purse was from a previous job, where she had used a box cutter, and claimed the baking soda was for brushing her teeth and for heartburn. She admitted that the crack pipe in her purse was used for smoking cocaine and that she had used the pipe to smoke cocaine earlier in the day. The straw was used for "nose hits" or a "power charge," where one person would inhale the cocaine's smoke then blow it, through the straw, into another person's mouth or nose. She denied she had "exercise[d] care, custody, or control" over the cocaine found stuck in the seat next to her.

### 1. The trial court properly denied Ray's motion to suppress the items seized from her purse

■ Ray's first point of error complains the trial court erred in denying her motion to suppress the items found in her purse when she was arrested. She argues that, because the outstanding warrants for her arrest, stemming from her failure to respond to two traffic tickets, were not signed by the issuing magistrate, the arrests were warrantless and therefore invalid.

■ The standard for reviewing a trial court's ruling on a motion to suppress evidence is abuse of discretion. *Long v. State*, 823 S.W.2d 259, 277 (Tex.Crim.App. 1991). At a hearing on a motion to suppress, the trial court is the sole trier of fact and judge of the credibility of the witnesses as well as the weight to be given their testimony. *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App.1990); *Brooks v. State*, 830 S.W.2d 817, 820 (Tex. App.-Houston [1st Dist.] 1992, no pet.). On appellate review, the evidence presented at the suppression hearing is viewed in the light most favorable to the trial court's ruling to determine whether the trial court abused its discretion in denying the motion to suppress. *Whitten v. State*, 828 S.W.2d 817, 820 (Tex.App.-Houston [1st Dist.] 1992, pet. ref'd).

Ray points out that the two warrants on which Rhodes arrested her were not signed by the issuing magistrate. The warrants were admitted at the hearing on the motion to suppress and are contained in the record. In addition to not being signed by the magistrate, we note that the officer's return on each warrant is blank. Further, there is no affidavit attached to either warrant, and neither warrant sets out the probable cause on which it issued.

Article 38.23 of the Code of Criminal Procedure provides,

(a) No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

Tex.Code Crim. Proc. Ann. art. 38.23(a) (Vernon Supp.2004–2005).

■ This exclusionary rule has as its primary purpose the deterrence of police activity that could not have reasonably been believed by the officers to be lawful. *Drago v. State*, 553 S.W.2d 375, 378 (Tex. Crim.App.1977). An exception is provided in Subsection (b): "that the evidence was obtained by a law enforcement officer acting in objective good faith reliance upon a warrant issued by a neutral magistrate based on probable cause." TEX.CODE CRIM. PROC. ANN. art. 38.23(b) (Vernon Supp. 2004–2005).

Ray claims there was no showing of the probable cause on which the magistrate issued the warrants for her arrest (and under which authority Rhodes arrested her). She is correct. At the hearing on the motion to suppress, the State only called the officer who actually arrested Ray pursuant to the warrants. The State did not call the magistrate who issued the arrest warrants, did not present testimony of the officer or officers who issued the tickets which led to the warrants, and did not present any affidavits supporting the warrants. In short, there was no evidence presented that the warrants had issued from "a neutral magistrate based on probable cause." TEX.CODE CRIM. PROC. ANN. art. 38.23(b); *see also Dunn v. State*, 951 S.W.2d 478, 479 (Tex.Crim.App.1997); *State v. Martin*, 833 S.W.2d 129, 132–33 (Tex.Crim.App.1992).

■ Even assuming Rhodes arrested Ray in good-faith reliance on the warrants, those warrants are wholly lacking in the requisites of Article 38.23 and the decisions by the appellate courts applying that statute. "[W]hen the State justifies an arrest on the basis of a warrant, it must produce the warrant and supporting affidavit to the trial court if the validity of the arrest is challenged." *Oliver v. State*, 10 S.W.3d 411, 414 (Tex.App.-Waco 2000, no pet.), *citing Etheridge v. State*, 903 S.W.2d 1, 19 (Tex.Crim.App.1994). Accordingly, to the extent the items in Ray's purse were discovered as a result of her arrest by Rhodes pursuant to these outstanding warrants, those items were illegally obtained. This conclusion, however, does not end our analysis.

■ Rhodes testified at the hearing on the motion to suppress that his search of the vehicle was one incident to the arrests of George and Ray. Rhodes later testified at trial, without objection, that he searched the vehicle "as part of an inventory."

■ A trial court's ruling at a suppression hearing is based on the evidence adduced at that hearing. In reviewing that decision, we generally consider only that evidence, rather than evidence introduced later in the trial. *Rachal v. State*, 917 S.W.2d 799, 809 (Tex.Crim.App.1996); *Green v. State*, 78 S.W.3d 604, 608 (Tex. App.-Fort Worth 2002, no pet.); *see West-fall v. State*, 10 S.W.3d 85, 89 (Tex.App.-Waco 1999, no pet.). However, when the legality of the seizure is relitigated at trial, consideration of relevant trial testimony is appropriate in our review. *Rachal*, 917 S.W.2d at 809; *Green*, 78 S.W.3d at 608; *In re L.R.*, 975 S.W.2d 656, 658 (Tex.App.-San Antonio 1998, no pet.). Where the state raises the issue at trial without objection, as in the instant case, the defendant has made an election to reopen the evidence, and consideration of the relevant trial testimony is appropriate in our review. *Rachal*, 917 S.W.2d at 809.

■ On making a valid arrest, an officer may search the suspect's vehicle for the purpose of taking an inventory. *Madison v. State*, 922 S.W.2d 610, 612 (Tex. App.-Texarkana 1996, pet. ref'd). The inventory exception to the warrant requirement exists in order to promote the public policies of protecting an owner's property while it is in police custody, insuring

against a claim of lost, stolen, or vandalized property, and guarding police from danger. *Florida v. Wells,* 495 U.S. 1, 4, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990). However, the United States Supreme Court held in *Wells* that such an inventory search must be conducted pursuant to "standardized criteria" or "established routine." *Id.* Failure by the state to show, on proper objection by the defendant, that the inventory search was conducted pursuant to the police department's procedure, will invalidate the search. *Yaws v. State,* 38 S.W.3d 720, 723 (Tex.App.-Texarkana 2001, pet. ref'd).

Here, the State offered no evidence that the inventory search of George's vehicle was pursuant to "standardized criteria," and only Rhodes' testimony that such an inventory was "common practice," to show that it was pursuant to "established routine." However, the only objection Ray made at trial to the admission of the contents of her purse was the same objection she made at the suppression hearing: that the items were seized pursuant to a search incident to her arrest on invalid outstanding warrants.[2]

■■■ Appellate courts should sustain a trial court's ruling on a motion to suppress if it is correct on any applicable legal theory. *Howard v. State,* 932 S.W.2d 216, 218 (Tex.App.-Texarkana 1996, pet. ref'd). Regardless of the validity of the outstanding warrants for Ray, the lawful arrest of George, the driver of the vehicle, together with his ascertainment that Ray, the only passenger, possessed no valid driver's license, provided a basis for the officer to search the car pursuant to an inventory.

This rationale supports admission of the paraphernalia in Ray's purse into evidence. The trial court did not abuse its discretion. Ray's first point of error is overruled.

## 2. The evidence was legally and factual sufficient

■■■ The evidence adduced at trial has been summarized above. In reviewing the legal sufficiency of the evidence, we view the relevant evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Johnson v. State,* 23 S.W.3d 1, 7 (Tex.Crim.App. 2000). In reviewing the factual sufficiency of the evidence, we are required to determine whether, considering all the evidence in a neutral light, the jury was rationally justified in finding guilt beyond a reasonable doubt. *Zuniga v. State,* 144 S.W.3d 477, 484, 2004 Tex.Crim.App. LEXIS 668, at *20 (Tex.Crim.App. 2004).

The jury was presented evidence that Ray was in a car with George and that eight rocks of crack cocaine, weighing 1.33 grams, were found stuck between her seat and the car's center console. In her purse, found at her feet in the car, were implements common (according to testimony from Rhodes, Officer Ray, and Ray herself) to the use of cocaine, including a crack pipe, razor blade, and short straw, as well as baking powder, which could be used to dilute or cut crack cocaine, thereby increasing the yield for delivery or sales purposes. The jury heard Ray admit to using crack cocaine earlier in the day and

**2.** In *Wells,* the United States Supreme Court affirmed the Florida Supreme Court's decision to suppress evidence found in a closed container during an inventory search because police had "no policy whatever with respect to the opening of closed containers encountered during an inventory search." *Wells,* 495 U.S. at 4–5, 110 S.Ct. 1632. Here, the record does not show whether Ray's purse was open or closed when Rhodes seized and searched it. Even if the purse was closed, Ray makes no challenge to the seizure of its contents on that basis.

heard that she knew George had cocaine with him that night. The jury also heard her admit she had been convicted twice for possession of cocaine and once for delivery of cocaine. The jury was free to consider this evidence in judging her credibility. The jury also heard the testimony of Officers Rhodes and Ray. The jury could weigh this testimony and apply its common sense to the facts before it. It is clear a rational trier of fact could find, beyond a reasonable doubt, that Ray exercised conscious care, custody, or control over the cocaine found by her seat and that she possessed the cocaine with the intent to eventually deliver some or all of it to another person. The evidence is legally sufficient to support Ray's conviction.

Similarly, the evidence, when viewed in a neutral light, is not too weak to support the jury's finding of guilt beyond a reasonable doubt. Nor can we say, when weighing the evidence supporting and contravening the conviction, that the contrary evidence is strong enough the State could not have met its burden of proof. In short, the only contradictory evidence was presented by Ray's testimony, and it was not compelling. She admitted knowing that George possessed the drugs, to having a significant history of drug use and dealing, including that she had used cocaine earlier in the same day. She omitted, however, any reference to the drug transaction between Williams and George. The evidence is not too weak to support the jury's verdict. The evidence presented at trial is factually sufficient to support the verdict. Ray's second point of error is overruled.

### 3. Any error in limiting testimony of the defense witness was harmless

■ In her third point of error, Ray complains the trial court erred in precluding her from presenting to the jury Williams' testimony (described above), that she proffered outside the jury's presence. By this action, Ray contends the trial court excluded relevant evidence which could have allowed the jury to infer that George provided cocaine to Williams from the Tylenol bottle, or one "just like [it]," found stuck in the seat where she had been sitting in George's car, and therefore the cocaine found in George's car was George's, not hers.

The State opposed Williams' testimony claiming that, had it known Williams would be called as a witness, the State would have bench warranted George (who was apparently in the penitentiary) to testify at Ray's trial. The State sought no continuance to accommodate securing George's presence, and the trial court apparently relied on this objection in excluding this testimony.

The testimony Ray sought to offer was relevant because it could have tended to make the existence of a fact of consequence to Ray's guilt more or less probable than without the same evidence being adduced. *See* Tex. R. Evid. 401. The trial court erred in excluding it. We must now decide whether this error was one of constitutional magnitude.

■ The relevant question is whether Ray's Sixth Amendment right to present a defense was compromised. Williams testified Ray was present when he asked George for cocaine and when George gave him the cocaine. Ray testified she "knew what [George] had," and that she had met George before the occasion at Williams' home, but did not immediately recognize him. All of this, including Williams' testimony before the jury that George was a drug dealer, supports an inference that Ray was aware of George's status as a drug dealer and that he was dealing drugs on the night of the offense.

Ray was not prevented from presenting a defense. Despite the trial court's exclu-

sion of the proffered testimony, she was able to present Williams' testimony that he had been with her the night of the offense; that George, whom Williams knew to deal drugs, came to his house; that Williams did not see Ray in possession of the Tylenol bottle in which the eight rocks of crack cocaine were found; and that Ray left with George. Ray then testified at length, but failed to mention any delivery of cocaine from George to Williams, which delivery, according to Williams' testimony outside the jury's presence, Ray had witnessed.

We cannot say the excluded testimony "form[ed] such a vital portion of the case that [it] effectively preclude[d] the defendant from presenting a defense." *Potier v. State,* 68 S.W.3d 657, 665 (Tex.Crim. App.2002). Accordingly, any error was not of constitutional dimension, and we will conduct a harm analysis under TEX.R.APP. 44.2(b).

Errors which do not affect substantial rights are to be disregarded. TEX.R.APP. 44.2(b). We have summarized the evidence presented at trial, including Ray's own account of the events, as well as the proffered testimony of Ray's witness, Williams. Ray was able to present a defense. Although the trial court erred in excluding portions of Williams' testimony, Ray was able to get before the jury her defensive theory, and the jury was free to believe or disbelieve that theory. Williams, based on the testimony he offered at the proffer, would not have added significantly to Ray's defense. No substantial rights of Ray were affected, and the error will be disregarded. Ray's third point of error is overruled.

We affirm the judgment.

Dissenting opinion by Justice CARTER.

JACK CARTER, Justice, dissenting.

When Richard George came to Oliver Williams' house, the only other person there was Bonnie Jalaane Ray. Ray left with George, and shortly afterward George was stopped by the police. George was the driver, and the contraband was found in George's car located between the passenger seat and the center console, making it readily available to both George and Ray. The primary contested issue in the case was whether Ray had possession of the cocaine. Ray testified that she never exercised care, custody, or control of the container of cocaine. Therefore, evidence concerning the possession of the container of cocaine was vitally important.

After the State rested its case, Ray called Williams as her first witness. Williams began testifying that Ray was at his house on the day of this arrest and later George came over. He was then asked if he was familiar with George's selling drugs. The State objected, and the jury was retired. Outside the presence of the jury, Ray's counsel stated that Williams would testify that George was a known drug dealer, that Williams bought a rock of crack cocaine from George, and that George possessed the bottle containing cocaine that was in evidence. The State's objections were as follows: "[F]irst of all, this is the first I've ever heard about this person ever being called to the stand. Secondly, ... if this jury's to hear that he bought cocaine from Richard George or whatever, it leaves this jury with the impression, that well, Bonnie Ray must have never known about it...." Finally, the State objected "And I think this is a surprise. .... So I'm going to claim surprise here, Judge,...." The court then stated, "Go ahead and do your proffer outside the jury's presence. I'm going to exclude the testimony."

The excluded evidence was significant and relevant; unquestionably it should have been admitted. The State made no

plausible objection. That the State was not aware of the witnesses the defendant intended to call does not constitute a reason to exclude. The State's further objection (that such evidence might convince the jury that Ray did not know about the cocaine) demonstrated the relevancy of the evidence. After all, the issue for the jury's determination was whether Ray possessed the cocaine. The trial court did not clarify the legal basis for excluding the testimony and stated it was excluded because "I don't believe it's admissible."

Experience has shown that jurors are fully able to judge the credibility of witnesses. The trial is to be conducted by allowing advocates to present their case and cross-examine adverse witnesses within rules applicable to both sides. Our adversarial system works because evidence is subjected to rigorous testing and analysis before an impartial tribunal. It is the process of law that allows us to have confidence in the proceedings and determinations. Here that process was impeded.

The real question before this Court is whether the error is reversible.

I agree with the majority that, based on *Potier v. State*, 68 S.W.3d at 657 (Tex. Crim.App.2002), the error is not classified as a constitutional one, since the defendant was allowed to present a defense. However, I believe this error was significant and deprived the defendant of a witness who had personal knowledge of highly relevant testimony. The question is whether the error is to be disregarded. TEX.R.APP. P. 44.2(b).

In making this determination, review of the entire record is proper, including the character of the error, how it is considered in light of other evidence, the defensive theories, closing arguments, and other matters. *See Morales v. State*, 32 S.W.3d 862, 867 (Tex.Crim.App.2000). The relatively brief record contains testimony from the arresting officer, an officer establish-

ing the chain of custody of evidence, a chemist, and an officer assigned to the drug enforcement unit. Ray tendered the testimony of Williams and her own testimony. The character of the alleged error has been explained—the exclusion of highly relevant testimony on the most important issue in the case without any plausible objection being presented. It is a serious error. The defense of the case was primarily that Ray did not possess the contraband. At the closing argument, counsel for Ray stated, "the issue is whether the State has proven beyond a reasonable doubt that she possessed this crack cocaine in Richard George's car." To determine that the exclusion of Williams' testimony would not have an effect on the jury, one must conclude the jury would have disregarded and disbelieved his testimony. That should have been left for the jury to determine, not the court. After a review of the record, I do not have a fair assurance that the error did not influence the jury or had but slight effect, but instead find that the exclusion of the testimony had a substantial and injurious effect or influence in determining the jury's verdict. I respectfully dissent.