Affirmed and Opinion filed February 3, 2005









Affirmed
and Opinion filed February 3, 2005.

 

 

In The

 

Fourteenth Court of Appeals

_______________

 

NO. 14-01-00408-CR

_______________

 

KEVIN SAUCEDA, Appellant

 

V.

 

THE STATE OF TEXAS,
Appellee

________________________________________________________

 

On Appeal from 182nd District
Court

Harris County, Texas

Trial Court Cause No. 818,681

________________________________________________________

 

O P I N
I O N   O N   R E M A N D








In 2001, appellant Kevin Sauceda was
convicted of aggravated sexual assault of a child and sentenced to forty years= confinement.  This court affirmed the conviction in an
unpublished opinion, holding that (1) the complainant=s outcry statement was sufficiently
reliable; (2) appellant=s constitutional right of confrontation had not been
violated; and (3) the State was entitled to introduce a videotape of the
complainant=s interview with a caseworker, in its
entirety, under the rule of optional completeness if the defense called the
caseworker to testify.  Sauceda v.
State, No. 14-01-00408-CR, 2002 WL 977152, at *1 (Tex. App.CHouston [14th Dist.], Feb. 28, 2002)
(ASauceda I@). 
The Court of Criminal Appeals granted review to determine whether asking
a question for impeachment purposes rendered the Aentire videotaped interview of
extraneous offenses admissible under the rule of optional completeness.@ 
Sauceda v. State, 129 S.W.3d 116, 117 (Tex. Crim. App. 2004) (ASauceda II@). 
In a divided opinion, the Court of Criminal Appeals concluded that the
videotape would not have been admissible and remanded the case to this court
with instructions to conduct a harm analysis. 
Id. at 124.  For the
reasons discussed below, we hold that the error was harmless and affirm
appellant=s conviction.  

I.  Factual and
Procedural Background

The facts of this case are thoroughly
set forth in Sauceda II and we need not detail them here.  See id. at 117B19. 
However, to place our harm analysis in context, we briefly summarize the
pertinent factual and procedural history of this case.  

At the time of the charged offense,
appellant was unable to walk without the aid of a walker or a wheelchair and
required assistance with some basic functions.[1]  He was living with his mother and three
nieces, C.S., M.S., and B.S.  After a
family reunion, appellant=s sisters became suspicious that appellant may have molested
the three girls and they questioned their nieces.  The circumstances surrounding the questioning
were described in Sauceda I as follows: 

Appellant=s family
stayed at a local motel.  Appellant=s sisters . . . Valicia Evans, Margo Suggs, and
LaNelle Sauceda, as well as their cousin, Janette LaStrape, became alarmed when
appellant asked both C.S. and B.S. to sleep in his room . . . .  That evening, the aunts questioned C.S. and
M.S. separately.  Both denied having been
molested.  The following day, the aunts
spoke with the girls again.  They spoke
first with the youngest, B.S., who said she had been molested.  According to Ms. Evans=[s] written recitation of the girls= outcry, B.S. also said M.S. and C.S. had been
molested.  The aunts then called C.S.
into the room.  According to Ms. Evans=s narrative, the following transpired:

 








We told her that she needed to tell us everything
because her sister, [B.S.], has told us how [appellant] has done some things to
her and her sisters and she replied why would you say a thing like that.  So we told [B.S.] to tell her its [sic] OK, to
tell the truth, and we won=t be mad at her and that it is always better to tell
the truth.  It was hard at first, but she
finally told us that he did . . . .  We
then called [M.S., who admitted the molestation].

 

Sauceda, 2002 WL 977152, at * 1 (some
alterations in original).  Although the
State charged appellant with three counts of sexual assault, one for each
niece, he was prosecuted only for the offense against M.S.  Id. 


At trial, M.S. testified to two
incidents of sexual assault by appellant, both occurring during the summer of
1999.  M.S. stated that during the first
incident, appellant called her into his room and told her to take off her clothes.  When she refused, he threatened her with a
butcher knife.  She then complied and
appellant sexually assaulted her, penetrating her vagina with his penis.  M.S. testified that during the second
incident, which occurred approximately one week before the family reunion,
appellant again called her into his room and told her to get into bed with
him.  When she refused, he pulled a gun
out from under the covers.  She again
complied and appellant sexually assaulted her. 


On cross-examination, appellant=s counsel questioned M.S. regarding
any statements she had made to anyone about appellant=s use of the butcher knife or the gun
prior to trial, including whether the information was contained in her
videotaped interview with Children=s Protective Services Investigator
Fiona Stephenson.[2]  M.S. testified that she could not remember
whether she had mentioned the knife or the gun to her aunts and the
police.  Although initially M.S. stated
that she thought she had mentioned it during the videotaped interview, when
appellant=s counsel asked M.S., Aif we look at the videotape will we
see you talking about a butcher knife?,@ 
M.S. replied that she could not recall.








After the State rested, appellant=s counsel indicated he wished to call
Stephenson as an impeachment witness, claiming that M.S. made no mention of the
knife or gun during the videotaped interview. 
Appellant informed the court that the State had indicated it would
object to Stephenson=s testimony and would move to introduce the entire videotape
under the rule of optional completeness if the defense attempted to impeach
M.S.=s testimony through Stephenson.[3]  The trial court stated it agreed with the
State and, at that point, appellant=s counsel made an offer of proof,
stating that if he had called Stephenson she would testify that M.S. never
referred to the use of a gun or a knife during the videotaped interview and
that Stephenson would also state she never Aspecifically asked [M.S.] about the
presence of a weapon or the use of one as a threat.@ 
The defense subsequently rested without calling any witnesses. 

As noted, appellant=s direct appeal asserted, in part,
that the trial court erred in ruling the videotape would be admissible under
the rule of optional completeness if Stephenson were allowed to testify.  We affirmed the trial court=s ruling, and the Court of Criminal
Appeals determined we erred.  Sauceda,
129 S.W.3d at 124.  In accordance with
that court=s mandate, we now address whether the
trial court=s error was harmful.  

II.  Harm
Analysis

A.        Harmless
Error Standard 








The harmless error standard we apply
in this case depends on whether the trial court=s erroneous exclusion of Stephenson=s testimonyBBthe Asole defense witness@BBamounted to a violation of appellant=s constitutional right to present a
defense.  Sauceda, 129 S.W.3d at
121; Potier v. State, 68 S.W.3d 657, 665 (Tex. Crim. App. 2002); see
Ray v. State, 148 S.W.3d 218, 225B26 (Tex. App.CTexarkana 2004, no pet.) (examining
whether the defendant was allowed to present a defense).  An erroneous evidentiary ruling mayCalthough rarely doesCrise to the level of denying a
defendant the constitutional right to present a meaningful defense.  Potier, 68 S.W.3d at 663.  Exclusion of a defendant=s evidence is constitutional error
only if Athe evidence forms such a vital
portion of the case that exclusion effectively precludes the defendant from
presenting a defense.@  Id. at
665.  

In his brief, appellant argued that
he was Agreatly harmed@ by the exclusion of Stephenson=s testimony because he was unable to Aestablish that [M.S.] had
misrepresented a highly prejudicial aspect of her alleged assault, especially
since this went to the heart of his defensive theory that the child=s allegations were due to her
susceptibility to suggestion and penchant for embroidering upon her previous
statements.@ 
According to appellant, Stephenson=s testimony would have established
that M.S. had not told anyone about a gun or knife prior to trial and that
portion of her testimony was but a Aconfabulation.@

For the reasons discussed below, we
conclude that despite appellant=s inability to present Stephenson=s testimony, he was able to impeach
M.S.=s testimony concerning the weapons
through his questioning of M.S. and other witnesses.  Cf. Potier, 68 S.W.3d at 665B66 (listing among the evidence
establishing defendant=s defense, testimony of a police officer that supported the
defendant=s claim of self-defense); see also
Sanchez v. State, No. 13-99-591-CR, 2004 WL 1584923, at * 3B4 (Tex. App.CCorpus Christi, July 15, 2004, pet.
ref=d) (not designated for publication)
(relying in part on counsel=s cross-examination of witnesses to conclude the defendant
was not precluded from presenting his defense).

As to the issue of whether M.S. told
anyone before trial that appellant had threatened her with a knife and a gun,
appellant=s counsel cross-examined M.S. as
follows:

Q.:  Now, the
day it happened you never said anything to your Aunt Jackie about [appellant]
having a butcher knife; did you?

M.S.:  No.

* * * * 

Q.:  And that
day you didn=t say anything to your grandmother about [appellant]
having a butcher knife; did you?

* * * *

M.S.: Oh, no, no, sir. 

* * * * 

Q.:  But you didn=t tell
your aunts about a butcher knife; did you?

M.S.:  I don=t think I did. 
I think B I don=t remember. 

* * * *

 








Q.:  Do you
remember after you talked to your aunts you talked to some people from the
police department; do you remember that?

M.S.:  Yes.

Q.:  You didn=t tell them about a butcher knife did you?

M.S.: I don=t
remember.

 

Counsel continued this line of
questioning, specifically asking M.S. whether she told Stephenson during the
taped interview about the butcher knife. 
Initially M.S. stated she did not remember whether she had, but then
stated, AI think I did.@ 
Following some additional questions, which evidenced M.S.=s uncertainty as to whether she had
in fact told Stephenson about the knife, appellant=s counsel questioned M.S. further, as
follows:  

Q.:  If we look
at that videotape will we see you talking about a butcher knife?

M.S.:  I don=t remember.  I
don=t know.

* * * * 

Q.:  But that
was closer to the third grade than it is now B the
time you made the videotape was closer to third grade than today is to the
third grade; right?

M.S.:  Yes.

Q.:  Things were
fresher in your mind; correct?

M.S.: Yes.

Q.:  You
remember things a little better then; right?

M.S.: Yes, a little.

Q.:  So what you
said on the videotape is different than what you=re
saying today.  What you said on the
videotape is probably more true than what you=re
saying today; correct?

M.S.: No.

Q.:  What=s on the videotape is not more true?  

M.S.: Yes, it=s
true.  And everything I=m saying today, I am saying today is true.

Q.:  So on the
videotape if you don=t talk about a butcher knife that would be true, there
was no butcher knife?

M.S.:  It is
[sic] a butcher knife.

Q.:  Can you
tell me today any reason that when you were making the videotape that you would
have left the butcher knife out of your story?

M.S.:  I don=t know.[4]








Appellant=s counsel then asked M.S. if, prior
to the reunion, she had mentioned to any of a number of individuals that
appellant had threatened her with a butcher knife and a gun.  These individuals were three of M.S.=s aunts present during her outcry
statement, her Aunt Jackie, her two summer school teachers, her grandmother,
and her mother.  In response, as to each
individual mentioned, M.S. stated that she had not told them.[5]  M.S. also acknowledged that after she made
the videotape, she had not told anyone about the butcher knife or the gun.

The State=s outcry witness, Valicia Evans, one
of M.S.=s aunts attending the reunion, did
not mention appellant=s use of a weapon during her direct examination when
recounting what M.S. had told her about the assaults.  On cross-examination of Evans, appellant=s counsel impugned the credibility of
M.S.=s testimony regarding the weapons by
questioning Evans as follows: 

Q.: Did you try to tell the police everything
important that you knew?

A.: Yes.

Q.: Did you tell the police that [M.S.] had told you
that [appellant] threaten [sic] her with a gun? 


A.: No.

Q.: Can you think of anything as you sit here now
important that . . . you didn=t tell the police about a gun or weapon or anything
about a weapon that you did not tell to the police?

A.: I did to the best of my ability.  No.

 

Appellant=s counsel also challenged M.S.=s testimony concerning the weapons
through his questioning of Sharon Ballard, the detective investigating the
assaults against M.S.  Indeed, after
establishing that Ballard watched as the videotaped interview was conducted,
through closed-circuit television, counsel=s questioning of Ballard demonstrated
that M.S. had not mentioned appellant had threatened her with a knife or a gun,
as follows:








Q.: So if a child said to you, based on your training
and experience, there=s an adult in my neighborhood and he has a big butcher
knife that he threatens children with, and he has a gun that he threatens
children with, would that be the kind of information where you would wait 13
days[6]
to do something about it?  

A.: No sir.  I=d call homicide.

* * * * 

Q.: Based on your investigation, did you ever have any
reason to be searching for a butcher knife?

A.: No, sir.

Q.: Based on your investigation, did you have any
reason to be searching for a gun?

A.: No, sir.

Q.: And again, basedBByou=re an instructor. 
You=re an expert. 
If you thought someone was out threatening children with guns and
butcher knives, would that be a priority case for you?

* * * * 

A.: Yes, sir. 

 

Based on this testimony, we conclude
appellant was able to impeach M.S.=s testimony regarding the knife and
gun; therefore, he was not precluded from presenting his defense by the
exclusion of Stephenson=s testimony and, accordingly, we apply the harmless error
standard of Rule of Appellate Procedure 44.2(b).

B.        Rule
of Appellate Procedure 44.2(b)








Under Rule of Appellate Procedure
44.2(b), a non-constitutional error not affecting a defendant=s substantial rights must be
disregarded.  Tex. R. App. P. 44.2(b); Jeffley v.
State, 38 S.W.3d 847, 858 (Tex. App.CHouston [14th Dist.] 2001, pet. ref=d). 
A substantial right is affected if: A(1) the error had a >substantial and injurious= effect or influence in determining
the jury=s verdict or (2) leaves one in grave
doubt whether it had such an effect.@ 
Davis v. State, 22 S.W.3d 8, 12 (Tex. App.CHouston [14th Dist.] 2000, no
pet.).  In conducting our analysis, we
are to consider the entire record, including all evidence admitted, the nature
of the evidence in favor of the verdict, and Athe character of the alleged error
and how it might be considered in connection with other evidence in the case.@ 
Arroyo v. State, 123 S.W.3d 517, 520 (Tex. App.CSan Antonio 2003, pet. ref=d) (citing Motilla v. State,
78 S.W.3d 352, 355 (Tex. Crim. App. 2002)). 
We may also consider other factors, such as the jury instructions,
theories of the parties, closing arguments, voir dire, and whether the State
emphasized the error.  Motilla, 78
S.W.3d 355B56. 

C.        Discussion

The testimony presented above not
only establishes appellant was not precluded from presenting his defense by the
exclusion of Stephenson=s testimony, but also evidences that appellant=s substantial rights were not
affected by the trial court=s evidentiary ruling.  See,
e.g., Ray, 148 S.W.3d at 226 (relying on its analysis of whether the
exclusion of defendant=s evidence was a constitutional error as also evidencing that
the error was harmless).  Appellant=s cross-examination of M.S.
demonstrated that her testimony before trial concerning appellant=s use of a knife or a gun was, at
best, inconsistent and, at worst, a fabrication.  Indeed, appellant=s overall questioning of M.S.
regarding any specific reference to a knife or a gun during the videotaped
interview indicated that M.S. had not mentioned either.  

M.S.=s testimony concerning the weapons
was further called into doubt by the testimony of Evans, the outcry witness,
which reflected that she was unaware of appellant=s alleged use of a weapon.  Most importantly, Detective Ballard, after
stating she had observed the interview as it was being taped, also indicated in
her testimony that she was unaware of appellant=s use of a weapon. 








Moreover, although Stephenson would
have testified M.S. had never mentioned that appellant threatened her with a
weapon, appellant also acknowledged in his offer of proof that Stephenson would
have testified that she never specifically asked M.S. about any weapons.  We can only speculate as to how those two
statements would be considered by a jury, but the import of Stephenson=s testimonyCif anyCregarding M.S.=s failure to mention weapons during
the interview would likely be diminished by Stephenson=s statement that she never directly
asked M.S. about any weapons.

Under the Texas Penal Code,
aggravated sexual assault of a child occurs when a person, either intentionally
or knowingly, causes the penetration of the child=s anus or sexual organ by any means
if the victim is younger than 14 years old. 
Tex. Pen. Code Ann. ' 22.021(a) (Vernon 2003 & Supp.
2004B05); see Facundo v. State, 971
S.W.2d 133, 135 (Tex. App.CHouston [14th Dist.] 1998, pet. ref=d). 
Here, M.S., eight years old at the time of the charged offenses,
testified that appellant inserted his penis into her vagina.  The State=s medical expert, Dr. Michelle Lyn,
had examined M.S. and testified that she observed redness on M.S.=s vagina, indicating Asome type of penetration or attempted
sexual intercourse@ consistent with a sexual abuse victim.  Whether appellant had used a weapon during
the assaults was not a factor precluding his conviction.

Considering the entire record, we
conclude the exclusion of Stephenson=s testimony did not affect appellant=s substantial rights.  Based on appellant=s proffer of Stephenson=s testimony, it would not have added
significantly to his defense, nor did its exclusion result in a substantial and
injurious affect on the jury=s verdict.  

Accordingly, we affirm the judgment
of the trial court.  

 

/s/        Eva M.
Guzman

Justice

 

Judgment rendered and Opinion filed
February 3, 2005.

Panel consists of Justices Yates,
Edelman, and Guzman.

 

 











[1]  Although in Sauceda
II it was stated that appellant was Aconfined
to a wheelchair@ at the time of the offense, the record indicates he
used a wheelchair, but was also ambulatory with the aid of a walker.    





[2]  This
questioning of M.S. covered approximately fifteen pages of the reporter=s record.  





[3]  According to
appellant=s counsel, the videotaped interview with M.S.
contained numerous references to appellant=s
alleged sexual assaults of M.S.=s sisters, C.S. and B.S. 





[4]  At that point
in the proceedings, M.S. began crying and the court adjourned for a short
recess.  





[5]  Following
this, appellant=s counsel asked M.S. who was the first person she Aever told about the butcher knife and the gun.@  M.S. stated
that she told her Aunt Val and Aunt ANel@ after they had asked her the second time.  At that point, M.S. also stated that she had
told the police, but she stated she did not know if she had talked about the
weapons during the videotaped interview with Stephenson.  





[6]  Detective
Ballard had previously testified that the taped interview occurred on July 7,
1999, but she had not requested a warrant for appellant=s arrest until July 20, 1999, a delay of thirteen
days.