IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-1827-04






BONNIE JALAANE RAY, Appellant


 

v.



THE STATE OF TEXAS







ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW 


FROM THE SIXTH COURT OF APPEALS

GREGG COUNTY





 Hervey, J., filed a concurring opinion in which Johnson, Keasler, and
Cochran, JJ., joined.


CONCURRING OPINION


 In this case, the trial court excluded testimony of Williams (also known as "Big O") that was
relevant to appellant's defense that George (the driver) exclusively possessed the Tylenol bottle
found on appellant's side of the car. This Tylenol bottle contained the drugs (rocks of crack cocaine)
that appellant was accused of possessing with the intent to deliver.

 The Court of Appeals decided that the error in excluding the testimony was harmless because
it would not have added significantly to appellant's defense. See Ray v. State, 148 S.W.3d 218, 225
(Tex.App.-Texarkana 2004). The majority disagrees and suggests that only a jury could decide
whether Big O's excluded testimony would have added significantly to appellant's defense. See Ray
v. State, S.W.3d slip op. at 5 (Tex.Cr.App. No. PD-1827-04, delivered this date) (whether Big
O's testimony would have added significantly to appellant's defense was an issue for the jury to
decide). This abrogates well-established case-law on how appellate courts should apply the
Tex.R.App.Proc. 44.2(b) harm analysis for non-constitutional error and could result in the reversal
of many criminal cases for clearly harmless errors.

 Case-law says that Rule 44.2(b) does not authorize an appellate court to reverse a conviction
for non-constitutional error when it has fair assurance that this error did not influence the jury or had
but a slight effect. See Johnson v. State, 967 S.W.2d 410, 417 (Tex.Cr.App. 1998). In United States
v. Peak, 856 F.2d 825, 834-35 (7th Cir.), cert. denied, 488 U.S. 969 (1988), the Seventh Circuit
articulated this standard as it applies to a trial court's erroneous exclusion of defense evidence: (1)

 When erroneously excluded evidence would have been the only or primary evidence
in support of or in opposition to a claim or defense, its exclusion is deemed to have
had a substantial effect on the jury. In [citation omitted], for example, we suggested
that "[i]f the defendant were utterly precluded from defending himself, it would be
clear that his conviction had to be reversed even if the evidence of guilt was
overwhelming and could not have been offset by the evidence that the defendant
would have introduced if allowed to do so." [Citation Omitted]. Moreover, in
[citation omitted], although this court held the erroneous exclusion of non-hearsay
to be harmless, we implied that had the defendant not been able to present other
evidence to support his theory of the case, the error would not have been harmless. 
Similarly, other courts have held an error not to be harmless when it "'precludes or
impairs the presentation of an accused's sole means of defense.'" [Citations
Omitted].[ (2)]


 Thus, this Court could still decide that the error in excluding Big O's testimony was harmless
if, as the Court of Appeals decided, "it would not have added significantly to [appellant's] defense"
or if Big O's testimony was cumulative of other defense evidence that was before the jury. The
record in this case reflects that Big O testified by offer of proof that he saw George in possession of
the Tylenol bottle in appellant's presence at Big O's house shortly before the police found this
Tylenol bottle on appellant's side of the car. For example, on cross-examination by the prosecution
during appellant's offer of proof, Big O testified:

 Q. [Appellant] knew he had it already?


 A. She was sitting there. She had to know.


 Q. Okay. No question, she knew he had cocaine?


 A. Yeah.


 Q. And [defense counsel] asked you State's Exhibit 2-strike that, back up. [George]
and [appellant] leave your house, correct, they leave together?


 A. After he had gave me some.


 Big O was not permitted to testify in front of the jury that George was in possession of the
Tylenol bottle, but only that he never saw appellant in possession of the Tylenol bottle that the police
found on appellant's side of the car.

 Q. [DEFENSE]: During the period of time that [George and appellant] were at the
house, did you ever see [appellant] in possession of [the Tylenol bottle]?


 A. [BIG O]: No, I did not.


 Appellant testified before the jury that she never exercised "any control over that crack
cocaine that day." (3) She also testified that she "knew what [George] had" when she saw Big O and
George "conversing" at Big O's house but that she "wasn't paying attention to it." 

 Q. [DEFENSE]: Why did you go with [George]?


 A. [APPELLANT]: Stupidity. Well, when [George] came in, like I said, I was
watching TV, and him and [Big O] were conversing, and I knew what he had. I
never really-wasn't paying attention to it, and he [George] came over, and I was
laying kind of across the bed watching TV in the corner of the room, and [George]
sat down by me and he popped me on the leg and he said, "What are you up to?" 
And I said, "Nothing." I said, "I'm sitting here thinking about going home or going
to McDonald's and get something to eat." He said, "McDonald's?" And I said,
"Yes." He said, "All right." There's-the place that I lived at had a couple of 16-year-old boys living there, and I said, "I know there's probably nothing there to eat."


 And I really didn't want to drive my car to McDonald's because my tags were out,
and I had to choose between spending that little dollar, dollar and a half on
McChicken or gas. So [George] offered to take me. I got in the-that's where we
headed. That's where I was headed.


Appellant testified on cross-examination that she did not see the Tylenol bottle that night (although
it is not clear whether she was referring to not seeing it at Big O's or in George's car just before the
police seized it).

 In support of its argument that it was harmless to exclude Big O's proffered testimony that
he saw George with the Tylenol bottle at Big O's house, the State asserts in its brief:

 This case presents an interesting problem. The trial court, at the request of the state,
precluded [Big O] from testifying that George had delivered cocaine to him
immediately before the car ride. Appellant chose not to mention this transaction
despite being present when it occurred. [Citation to record omitted].


 Appellant's present argument that the central crux of [Big O's] testimony, that
George possessed the cocaine and delivered it to him, was very important to her
defense is belied by her decision not to tell the jury about it herself. Appellant chose
to say that she had never seen the [Tylenol] bottle that [Big O] said was like the
bottle in George's possession. [Citation to record omitted]. If she had testified to the
same story as related by [Big O], i.e., that she was present and observed the
transaction between the two men, appellant would have been in a position to ask the
trial court to reconsider its decision to exclude testimony and in a position to argue
to this Court that her defense was compromised by the exclusion of corroborating
testimony. Appellant chose a different path. Perhaps she decided after having a dry
run with the "hanging out in the living room watching George deal drugs and then
getting into the car with him" scenario that this version of events was not helpful and
tried to invent a better story, one where she did not know about the drugs. In any
case, appellant chose not to personally present the information that she complains
was harmful error to exclude. [Big O's] testimony would not have corroborated
appellant's testimony, but contradicted it on the important point of her awareness of
the cocaine.


 But, I read appellant's testimony to say that she knew George had drugs (when she testified
that "I knew what he had") but that she was not paying much attention to what was going on between
George and Big O at Big O's house. This could explain why she did not testify "to the same story
as related by [Big O]" and why she could not "personally present the information that she complains
was harmful error to exclude." This makes Big O's excluded testimony even more important to the
defense because it was the only evidence which could have placed the Tylenol bottle in the sole
possession of George which would have added significantly to appellant's defense that she did not
possess it. Compare United States v. Legarda, 17 F.3d 496, 499 (1st Cir.), cert. denied, 513 U.S. 820
(1994) (error in excluding defense evidence harmless where substance of excluded evidence was
eventually allowed into evidence). In addition, the evidence of appellant's guilt is not so
overwhelming as to support a conclusion that there is a fair assurance that the jury's verdict would
have been the same even with the admission of Big O's excluded testimony. The erroneous
exclusion of Big O's testimony was not harmless.

 With these comments, I join only the Court's judgment.


 Hervey, J.


Filed: November 16, 2005

Publish
1. See Potier v. State, 68 S.W.3d 657, 662 (Tex.Cr.App. 2002) (Rule 44.2(b) harmless error
analysis for non-constitutional errors is substantially the same as that in the federal system). 
2. Also see United States v. Hanson, 994 F.2d 403, 407 (7th Cir 1994) (erroneous exclusion of
evidence harmless if "the evidence of guilt was overwhelming and the defendant was allowed to put
on a defense, [even] if not quite so complete a defense as he might reasonably have desired"); State
v. Denison, 607 N.W.2d 796, 800 (Minn. Ct. App. 2000) (error in excluding defense evidence
harmless if appellate court "is satisfied beyond a reasonable doubt that the jury would have reached
the same verdict if the evidence had been admitted and its potential for damage fully realized"). 
3. Q. [DEFENSE]: Did you ever at any time exercise any control over that crack
cocaine that day.


 A. [APPELLANT]: No, sir, never.