**Bonnie Jalaane RAY, Appellant,**

v.

**The STATE of Texas.**

**No. PD–1827–04.**

Court of Criminal Appeals of Texas.

Nov. 16, 2005.

Tim Cone, Gilmer, for Appellant.

Ray Bowman, Asst. District Attorney, Longview, Matthew Paul, State's Atty., Austin, for State.

## OPINION

HOLCOMB J., delivered the opinion of the Court, in which MEYERS, PRICE, WOMACK, and COCHRAN, JJ., joined.

Appellant was convicted of possession of a controlled substance with intent to deliver. Punishment was assessed at imprisonment for twenty years and a $2,000 fine. Appeal was taken to the Sixth Court of Appeals. There, appellant complained that the trial court erred in excluding testimony that the drugs recovered belonged to someone else and that the exclusion of that evidence was harmful. With one justice dissenting, the court of appeals held that the trial court erred in excluding the evidence but also held that appellant was not harmed by the error. *Ray v. State,* 148 S.W.3d 218 (Tex.App.-Texarkana

2004). We granted review to determine whether the court of appeals erred in its harm analysis.

## The Relevant Facts

Police stopped and searched a car in which appellant was the front-seat passenger. A medicine bottle containing eight rocks of crack cocaine was recovered from a narrow space between the passenger seat and the center console. Police also recovered narcotics paraphernalia from appellant's purse. At trial, appellant admitted to possessing the paraphernalia but challenged the State's theory that she had care, custody, and control of the drugs. Appellant's testimony denying possession of the drugs was received by the trial court, but the trial court excluded the testimony of Owen Williams, an acquaintance of appellant, who had been with both appellant and the driver of the car shortly before the car was stopped. By offer of proof, appellant showed that Williams would have testified that the driver of the car took one rock of crack cocaine from a container, similar to the one found in the car, and gave it to Williams just before appellant and the driver of the car were stopped by police.

■ The court of appeals concluded correctly that Williams's testimony should have been admitted because it had a tendency to make the existence of a fact of consequence more or less probable than it would have been without the evidence. *Ray*, 148 S.W.3d at 225 (citing Tex.R. Evid. 401). The court of appeals then considered whether appellant was harmed, first by applying and rejecting a constitutional error standard under Texas Rule of Appellate Procedure 42.2(a), and then by applying a non-constitutional error standard under 44.2(b).

## Analysis and Holdings

### Standard for constitutional error

Reasoning from our holding in *Potier v. State*, 68 S.W.3d 657, 665 (Tex.Crim.App. 2002), the court of appeals concluded that the trial court's error did not prevent appellant from presenting her defense, and therefore, the error was not of constitutional dimension. *Ray*, 148 S.W.3d at 226.

■ In *Potier*, this Court held that the exclusion of a defendant's evidence can sometimes amount to a violation of his right to compel the attendance of witnesses in his favor. *Potier v. State*, 68 S.W.3d at 659; *see also Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967) (Sixth Amendment insures compulsory process to obtain favorable witnesses). However, "evidentiary rulings rarely rise to the level of denying the fundamental constitutional rights to present a meaningful defense." *Potier*, 68 S.W.3d at 663. There are two circumstances in which the improper exclusion of evidence may establish a constitutional violation: (1) when a state evidentiary rule categorically and arbitrarily prohibits the defendant from offering relevant evidence that is vital to his defense; or (2) when a trial court erroneously excludes relevant evidence that is a vital portion of the case and the exclusion effectively precludes the defendant from presenting a defense. *Id.* at 659–62; *Wiley v. State*, 74 S.W.3d 399, 405 (Tex.Crim.App.2002).

Because the trial court's exclusion of the evidence in this case was not grounded on any evidentiary rule prohibiting the admission of the testimony she offered, we are concerned only with the second category. Therefore, we must determine whether the exclusion of the evidence effectively prevented appellant from presenting a defense. *Wiley*, 74 S.W.3d at 405.

■ Through her own testimony, appellant was able to present to the jury her defense that the drugs did not belong to her and that, instead, the drugs belonged to the driver of the car. As this was the appellant's own testimony, however, the jurors were likely to give it less weight than the testimony of Williams, an acquaintance who was willing to testify under oath that he had been given illegal drugs by the driver of the car, that the drugs he received were similar to those discovered by police, and that those drugs were found in a similar container. This testimony would have incrementally furthered appellant's defensive theory. *See, e.g., Cohn v. State,* 849 S.W.2d 817, 820 (Tex.Crim.App.1993). Nevertheless, because appellant was permitted to testify about her defensive theory, we cannot say that the exclusion of Williams's testimony effectively prevented her from presenting her defense.[1] We thus conclude that the court of appeals did not err in declining to apply a constitutional harm analysis under Tex.R.App. P. 44.2(a). We now turn to whether the court of appeals correctly analyzed the error under Tex.R.App. P. 44.2(b).

*Standard for non-constitutional error*

■ When evaluating harm from non-constitutional error flowing from the exclusion of relevant evidence, we examine the record as a whole, and if we are fairly assured that the error did not influence the jury or had but a slight effect, we conclude that the error was harmless. *Morales v. State,* 32 S.W.3d 862, 867 (Tex. Crim.App.2000). In this case, we do not have fair assurance that the exclusion of Williams's testimony did not influence the jury or had but a slight effect. *See John-*

*son v. State,* 967 S.W.2d 410 (Tex.Crim. App.1998).

■ A review of the record as a whole reveals that the question of possession was not only the most important issue in the case, it was the only contested issue in the case. Appellant was prejudiced because she was precluded from presenting third-party witness testimony which would have corroborated and given independent credibility to the defense she sought to establish. Because appellant's only argument was that she did not possess the drugs, and the State's case rested on a contrary argument, the erroneous exclusion of testimony that tended to establish possession in another was a "serious" error. *See Ray,* 148 S.W.3d at 227 (Carter, J., dissenting).

The court of appeals's majority opinion reasons that the error was harmless because Williams's testimony "would not have added significantly to Ray's defense." *Id.* at 226. However, as Justice Carter points out, this was an issue for the jury to decide—not the court of appeals. *Id.* at 227. As the jury did not have the benefit of the third-party testimony upon the most critical element the State had the burden to prove, we cannot say with fair assurance that the error did not influence the jury or had but a slight effect. Tex.R.App. P. 44.2(b). We reverse the judgment of the court of appeals and remand the cause to the trial court for further proceedings.

HERVEY, J., filed a concurring opinion, in which JOHNSON, KEASLER, and COCHRAN, JJ., joined.

KELLER, P.J., filed a dissenting opinion.

---

1. Had appellant chosen not to testify in her own defense, we would be faced with exclusion of clearly vital evidence, precluding altogether the presentation of the defensive theory.

HERVEY, J., concurring in which JOHNSON, KEASLER, and COCHRAN, JJ., joined.

In this case, the trial court excluded testimony of Williams (also known as "Big O") that was relevant to appellant's defense that George (the driver) exclusively possessed the Tylenol bottle found on appellant's side of the car. This Tylenol bottle contained the drugs (rocks of crack cocaine) that appellant was accused of possessing with the intent to deliver.

The Court of Appeals decided that the error in excluding the testimony was harmless because it would not have added significantly to appellant's defense. *See Ray v. State*, 148 S.W.3d 218, 225 (Tex. App.-Texarkana 2004). The majority disagrees and suggests that only a jury could decide whether Big O's excluded testimony would have added significantly to appellant's defense. *See Ray v. State*, 178 S.W.3d 833, at 836 (whether Big O's testimony would have added significantly to appellant's defense was an issue for the jury to decide). This abrogates well-established case-law on how appellate courts should apply the TEX.R.APP.PROC. 44.2(b) harm analysis for non-constitutional error and could result in the reversal of many criminal cases for clearly harmless errors.

Case-law says that Rule 44.2(b) does not authorize an appellate court to reverse a conviction for non-constitutional error when it has fair assurance that this error did not influence the jury or had but a slight effect. *See Johnson v. State*, 967 S.W.2d 410, 417 (Tex.Cr.App.1998). In *United States v. Peak*, 856 F.2d 825, 834–35 (7th Cir.), *cert. denied*, 488 U.S. 969, 109 S.Ct. 499, 102 L.Ed.2d 535 (1988), the Seventh Circuit articulated this standard as it applies to a trial court's erroneous exclusion of defense evidence:[1]

When erroneously excluded evidence would have been the only or primary evidence in support of or in opposition to a claim or defense, its exclusion is deemed to have had a substantial effect on the jury. In [citation omitted], for example, we suggested that "[i]f the defendant were utterly precluded from defending himself, it would be clear that his conviction had to be reversed even if the evidence of guilt was overwhelming and could not have been offset by the evidence that the defendant would have introduced if allowed to do so." [Citation Omitted]. Moreover, in [citation omitted], although this court held the erroneous exclusion of non-hearsay to be harmless, we implied that had the defendant not been able to present other evidence to support his theory of the case, the error would not have been harmless. Similarly, other courts have held an error not to be harmless when it " 'precludes or impairs the presentation of an accused's sole means of defense.' " [Citations Omitted].[2]

Thus, this Court could still decide that the error in excluding Big O's testimony was harmless if, as the Court of Appeals decided, "it would not have added signifi-

---

1. *See Potier v. State*, 68 S.W.3d 657, 662 (Tex. Cr.App.2002) (Rule 44.2(b) harmless error analysis for non-constitutional errors is substantially the same as that in the federal system).

2. *Also see United States v. Hanson*, 994 F.2d 403, 407 (7th Cir.1994) (erroneous exclusion of evidence harmless if "the evidence of guilt was overwhelming and the defendant was al-lowed to put on a defense, [even] if not quite so complete a defense as he might reasonably have desired"); *State v. Denison*, 607 N.W.2d 796, 800 (Minn.Ct.App.2000) (error in excluding defense evidence harmless if appellate court "is satisfied beyond a reasonable doubt that the jury would have reached the same verdict if the evidence had been admitted and its potential for damage fully realized").

cantly to [appellant's] defense" or if Big O's testimony was cumulative of other defense evidence that was before the jury. The record in this case reflects that Big O testified by offer of proof that he saw George in possession of the Tylenol bottle in appellant's presence at Big O's house shortly before the police found this Tylenol bottle on appellant's side of the car. For example, on cross-examination by the prosecution during appellant's offer of proof, Big O testified:

Q. [Appellant] knew he had it already?

A. She was sitting there. She had to know.

Q. Okay. No question, she knew he had cocaine?

A. Yeah.

Q. And [defense counsel] asked you State's Exhibit 2—strike that, back up. [George] and [appellant] leave your house, correct, they leave together?

A. After he had gave me some.

Big O was not permitted to testify in front of the jury that George was in possession of the Tylenol bottle, but only that he never saw appellant in possession of the Tylenol bottle that the police found on appellant's side of the car.

Q. [DEFENSE]: During the period of time that [George and appellant] were at the house, did you ever see [appellant] in possession of [the Tylenol bottle]?

A. [BIG O]: No, I did not.

Appellant testified before the jury that she never exercised "any control over that crack cocaine that day." [3] She also testified that she "knew what [George] had" when she saw Big O and George "conversing" at Big O's house but that she "wasn't paying attention to it."

---

**3.** Q. [DEFENSE]: Did you ever at any time exercise any control over that crack cocaine that day.

Q. [DEFENSE]: Why did you go with [George]?

A. [APPELLANT]: Stupidity. Well, when [George] came in, like I said, I was watching TV, and him and [Big O] were conversing, and I knew what he had. I never really—wasn't paying attention to it, and he [George] came over, and I was laying kind of across the bed watching TV in the corner of the room, and [George] sat down by me and he popped me on the leg and he said, "What are you up to?" And I said, "Nothing." I said, "I'm sitting here thinking about going home or going to McDonald's and get something to eat." He said, "McDonald's?" And I said, "Yes." He said, "All right." There's—the place that I lived at had a couple of 16–year–old boys living there, and I said, "I know there's probably nothing there to eat."

And I really didn't want to drive my car to McDonald's because my tags were out, and I had to choose between spending that little dollar, dollar and a half on McChicken or gas. So [George] offered to take me. I got in the—that's where we headed. That's where I was headed.

Appellant testified on cross-examination that she did not see the Tylenol bottle that night (although it is not clear whether she was referring to not seeing it at Big O's or in George's car just before the police seized it).

In support of its argument that it was harmless to exclude Big O's proffered testimony that he saw George with the Tylenol bottle at Big O's house, the State asserts in its brief:

This case presents an interesting problem. The trial court, at the request of the state, precluded [Big O] from testifying that George had delivered cocaine to

---

A. [APPELLANT]: No, sir, never.

him immediately before the car ride. Appellant chose not to mention this transaction despite being present when it occurred. [Citation to record omitted].

Appellant's present argument that the central crux of [Big O's] testimony, that George possessed the cocaine and delivered it to him, was very important to her defense is belied by her decision not to tell the jury about it herself. Appellant chose to say that she had never seen the [Tylenol] bottle that [Big O] said was like the bottle in George's possession. [Citation to record omitted]. If she had testified to the same story as related by [Big O], i.e., that she was present and observed the transaction between the two men, appellant would have been in a position to ask the trial court to reconsider its decision to exclude testimony and in a position to argue to this Court that her defense was compromised by the exclusion of corroborating testimony. Appellant chose a different path. Perhaps she decided after having a dry run with the "hanging out in the living room watching George deal drugs and then getting into the car with him" scenario that this version of events was not helpful and tried to invent a better story, one where she did not know about the drugs. In any case, appellant chose not to personally present the information that she complains was harmful error to exclude. [Big O's] testimony would not have corroborated appellant's testimony, but contradicted it on the important point of her awareness of the cocaine.

But, I read appellant's testimony to say that she knew George had drugs (when she testified that "I knew what he had") but that she was not paying much attention to what was going on between George and Big O at Big O's house. This could explain why she did not testify "to the same story as related by [Big O]" and why she could not "personally present the information that she complains was harmful error to exclude." This makes Big O's excluded testimony even more important to the defense because it was the **only** evidence which could have placed the Tylenol bottle in the sole possession of George which would have added significantly to appellant's defense that she did not possess it. *Compare United States v. Legarda*, 17 F.3d 496, 499 (1st Cir.), *cert. denied*, 513 U.S. 820, 115 S.Ct. 81, 130 L.Ed.2d 34 (1994) (error in excluding defense evidence harmless where substance of excluded evidence was eventually allowed into evidence). In addition, the evidence of appellant's guilt is not so overwhelming as to support a conclusion that there is a fair assurance that the jury's verdict would have been the same even with the admission of Big O's excluded testimony. The erroneous exclusion of Big O's testimony was not harmless.

With these comments, I join only the Court's judgment.

KELLER, P.J., dissenting.

The Court characterizes Owen Williams as an "acquaintance" of appellant's.[1] But Williams was not just an acquaintance; he was a friend. He explicitly said so in his own testimony on direct examination:

Q. All right Sir. Are you and her friends?

A. Yes.

Q. Is that a fair statement?

A. Yes.

In her testimony, appellant also admitted that she and Williams were "friends" and that was a "fair characterization." The

---

1. Court's op. at 835.

day she was arrested she went over to his house and watched television and played dominoes. She indicated that such behavior was not unusual and that "[w]e play dominoes, spades." So Williams was not a disinterested witness. He was a friend, with a motive testify in appellant's favor.

That fact alone would not make the error harmless, but there are other factors. Appellant was arrested on November 24, 2002, a Sunday. She testified under cross-examination that she had traveled from Longview to Marshall on Friday and made a return trip in time to be at Williams's house on Sunday. Despite the fact that she had no friends in Marshall and rarely went to that town, she drove to Marshall alone "just to get out of, get out of [sic] Longview." Although she claimed to have stayed at a motel, she could not recall its name, and could say only that it was on highway 80. She claimed that she did not smoke crack on Friday night or Saturday but smoked some residue in her pipe on Sunday morning before making her return trip to Longview.

Although she did not know George very well, appellant claimed that she accompanied him in his car to get something to eat at McDonald's. She testified that she had only a small amount of change and would otherwise be forced to choose between putting gas in her car and getting something to eat because there was a risk there would not be anything to eat at her home in Pine Tree. She had not had a job in over two months.

When she and George were stopped, the police found the container of crack cocaine in between the center console and the passenger seat, where appellant was sitting. Her purse contained drug paraphernalia: a crack pipe, a straw, a razor blade, and baking soda. She admitted that the crack pipe and the straw were used to consume drugs, but she claimed that the razor blade and the baking soda were for legitimate, non-drug purposes. She claimed the razor blade was for use in a box cutter at previous jobs, and she had taken it out of its sheath and placed it in a lipstick box to keep from cutting herself when she reached inside her purse. When asked whether she used the razor blade for illegal purposes, she initially answered "not really." As for the baking soda, she claimed it was for treating heartburn, or sometimes, for brushing her teeth. It is worth noting that appellant has prior drug convictions, including one for delivery.

Appellant's explanations were beyond incredible. She claims she did not have enough money for gas on the way home, but she chose to travel to Marshall for no reason at all. However, she cannot remember the name of the place she stayed. She claims the razor blade was used in connection with work, but she had not worked for over two months. And her attempt to offer an innocuous explanation for the baking soda is simply "over the top." As someone experienced with delivering drugs, she obviously knew that the razor blade and baking soda could not be explained as items possessed by a mere user. Her "not really" response to whether she used the razor blade for illegal purposes appears to be a not-so-subtle sign that she was not telling the truth.

The obvious explanation for all of these curious facts is that appellant went to Marshall (or perhaps somewhere else) to obtain the cocaine and met with George to sell the merchandise. Williams was an interested witness, and appellant's attempts to innocently explain her behavior were not credible. Under these circumstances, I would find the error in excluding the evidence to be harmless.