# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00504-CR

**Robert J. O'Brien, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE COUNTY COURT AT LAW NO. 2 OF BELL COUNTY
## NO. 2C10-02203, THE HONORABLE JOHN MISCHTIAN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted Robert J. O'Brien of the misdemeanor offense of unlawful restraint and assessed his punishment at confinement in the county jail and a fine, recommending suspension of the jail sentence and fine, and placement on community supervision.[1] On appeal, O'Brien complains about the trial court's exclusion of evidence concerning the victim's pending assault charge. We affirm the judgment of conviction.

## BACKGROUND

The jury heard evidence that on March 5, 2010, officers from the Killeen Police Department responded to a 911 call reporting a restrained person. On arrival at the duplex, the

---

[1] O'Brien was also charged with family violence assault arising out of the same incident. The assault charge was tried jointly with the unlawful restraint charge. The jury found O'Brien not guilty of the assault.

officers heard hysterical screams and subsequently found Rebecca Anderson, O'Brien's live-in girlfriend,[2] lying on the floor of the garage, her ankles bound by plastic flex cuffs, a cloth gag around her neck. The officers noted that Anderson's feet were swollen and discolored and observed further injuries to her face and wrists. They found a yellow nylon rope that had been used to tie her wrists and a knife nearby.[3] The officers also observed scratches on O'Brien's face, which they believed resulted from defensive actions by Anderson. Both O'Brien and Anderson had been drinking, and Anderson was highly intoxicated. O'Brien was arrested that night and subsequently charged with the misdemeanor offenses of unlawful restraint and family violence assault. The offenses were tried together before a jury.

At trial, Anderson testified about an ongoing argument between her and O'Brien that night which involved mutual physical assaults and culminated in O'Brien tying her up on the garage floor. She described how O'Brien tied her wrists together with rope, bound her ankles with plastic flex cuffs, and gagged her with a small towel to prevent her from screaming. She related how she was able to dislodge the gag and retrieve her cell phone while tied up on the floor to call her mother for help. Anderson's mother called 911. O'Brien testified on his own behalf at trial and admitted to restraining Anderson. He claimed that he did so to prevent her from driving in her intoxicated state and to stop her from assaulting him. He explained that he first handcuffed her hands behind her back and subsequently secured her ankles with plastic flex cuffs. He then removed the handcuffs replacing them with yellow nylon rope when he tied Anderson's wrists together in front of her.

_____

[2] O'Brien and Anderson subsequently married, approximately two weeks before trial.

[3] O'Brien claimed ownership of the knife and explained to police that he used it to cut the rope after he had tied Anderson's wrists together.

2

The jury acquitted O'Brien of the family violence assault, but found him guilty of unlawful restraint. *See* Tex. Penal Code Ann. § 20.02(a), (c) (West 2011). The jury assessed his punishment at confinement for 365 days in the county jail and, in addition, assessed a $2,000 fine. *See id.* § 12.21 (West 2011). The jury recommended that both the imposition of the jail sentence and payment of the fine be suspended, and that O'Brien be placed on community supervision. *See* Tex. Code Crim. Proc. Ann. art. 42.12, § 4 (West 2011). The trial court sentenced O'Brien in accordance with the jury's verdict and placed him on community supervision for a period of 20 months. *See id.* This appeal followed.

## DISCUSSION

In a single point of error on appeal, O'Brien asserts that the trial court erred by excluding evidence of an assault charge pending against Anderson at the time of trial. He contends that the exclusion of this evidence deprived him of the right to show Anderson's bias or interest in violation of Rule 613(b) of the Texas Rules of Evidence. He further suggests that the exclusion violated his constitutional right of confrontation.

During cross-examination of Anderson at trial, O'Brien's counsel sought to question her about a charge of assault against a public servant, and its subsequent dismissal, that arose out of an incident that occurred ten months after the instant restraint incident. The felony charge had been dismissed by the district attorney's office and the case referred to the county attorney's office for prosecution as a misdemeanor. At the time of trial, no formal charges had been filed by the county

3

attorney's office.  O'Brien argued that the evidence showed "a benefit that has been received by this obvious reluctant witness . . . that goes directly to the credibility of the witness."[4]

*Preservation of Error*

An appellate issue involving a proffer of evidence, as opposed to an objection, must still satisfy the preservation-of-error requirements. *Reyna v. State*, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005) (stating that purpose of requiring objection is to give trial court or opposing party opportunity to correct error or remove basis for objection and reasoning that "[a]though this case involves a proffer of evidence rather than an objection, the same rationale applies").  To preserve error regarding the exclusion of evidence, a party must not only tell the judge that the evidence is admissible, but must also explain why it is admissible. *Id.* at 177–79.  Further, the explanation given at trial must match the one urged on appeal. *Id.* at 179.  For example, an explanation for admissibility based upon the Rules of Evidence at trial does not preserve a claim on appeal that admission of the evidence is required by the Confrontation Clause. *Id.*

At trial, when O'Brien sought to question Anderson about the pending assault charge, he argued that the evidence revealed Anderson's bias which affected her credibility.  Yet, for the first time on appeal, in addition to arguing that he should have been allowed to question Anderson pursuant to Rule 613(b) of the Texas Rules of Evidence, *see* Tex. R. Evid. 613(b) (permitting examination of witness concerning bias or interest), he argues that the restriction on

---

[4] O'Brien also argued not only was the existence of the assault charge admissible, but evidence of the details of the assault were relevant to show "the competency of the witness . . . her state of mind . . . and how she acts."  He does not raise these arguments, based on asserted exceptions to the prohibition of character conformity evidence, on appeal.

4

cross-examination violated his constitutional right of confrontation, *see* U.S. Const. amends. VI, XIV. Because O'Brien did not articulate that the confrontation clause supported the admission of the evidence of Anderson's pending assault charge, the trial court never had the opportunity to rule on this rationale. Accordingly, O'Brien's complaint that the exclusion of this evidence violated his right to confrontation is not preserved for appellate review.

*Standard of Review*

We review a trial court's ruling on the admission or exclusion of evidence for an abuse of discretion. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011). A trial court abuses its discretion only if its decision "lies outside the zone of reasonable disagreement." *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010), *cert. denied*, 131 S.Ct. 2966 (2011); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g). We consider the ruling in light of what was before the trial court at the time the ruling was made and uphold the trial court's decision if it lies within the zone of reasonable disagreement. *Billodeau v. State*, 277 S.W.3d 34, 39 (Tex. Crim. App. 2009).

*Admissibility of Pending Charges*

A defendant is entitled, subject to reasonable restrictions, to show any relevant fact that might tend to establish ill feeling, bias, motive, interest, or animus on the part of any witness testifying against him. *Id.* at 42–43. "Nonetheless, the trial judge retains wide latitude to impose reasonable limits on such cross-examination 'based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness's safety, or interrogation that is repetitive

5

or only marginally relevant.'" *Irby v. State*, 327 S.W.3d 138, 145 (Tex. Crim. App. 2010), *cert. denied*, 131 S.Ct. 904 (2011) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)); *see Walker v. State*, 300 S.W.3d 836, 845 (Tex. App.—Fort Worth 2009, pet. ref'd) (trial court has discretion to limit testimony that may confuse issues or be only marginally relevant). To cross-examine a witness about pending charges, a proponent must demonstrate a "logical relationship between the pending charges and the witness'[s] 'vulnerable relationship' or potential bias or prejudice for the State, or testimony at trial." *Irby*, 327 S.W.3d at 147. While cross-examination about pending charges may in some cases be appropriate, a "causal connection" must be demonstrated before such cross-examination is permissible. *Id.* at 149; *see also Carroll v. State*, 916 S.W.2d 494, 505 (Tex. Crim. App. 1996) (Keller, J., dissenting) (noting that while ordinarily mere existence of pending charge gives rise to inference that witness may have been influenced, additional facts in record may show that such inference is not warranted).

Here, O'Brien was attempting to show that Anderson had a motive to testify favorably for the State—either because she was attempting to ingratiate herself with the prosecuting authority reviewing the subsequent assault case or because she received the benefit of the dismissal of the felony charge arising from that case. First, we note that no assault charge was formally pending against Anderson at the time of trial. The record reflects only that the subsequent assault charge had been referred by the district attorney's office and was being screened by the county attorney's office.

Moreover, during the offer of proof, Anderson testified that she was not promised a benefit in any way if she was "helpful" to the State and testified against O'Brien. She stated that she had been reluctant to testify but came to the decision to testify on her own—the day before she

6

testified at trial—because she was tired of coming to court and concluded that if she testified, she would not have to keep coming. Anderson further indicated that she did not make the decision to testify because of any persuasion by the prosecutor, any offer or circumstance presented by the county attorney's office, or because of any deal reached with the prosecutor or someone in the county attorney's office. She also testified that she was surprised by the dismissal of the felony charge, indicating that it was not part of any negotiations or discussions connected to the instant case. The evidence in the record contains facts—including Anderson's testimony, her reluctance to testify, and the status of her relationship with O'Brien—that refute the ordinary inference of bias resulting from the mere existence of a pending assault charge.

We conclude that O'Brien failed to establish any connection between the assault case being screened by the county attorney's office or the dismissal of the felony assault charge and her subsequent testimony in the instant case. Thus, we find that O'Brien failed to show the required logical relationship between the evidence and her testimony. Consequently, we hold that the trial court did not abuse its discretion by refusing to allow O'Brien to question Anderson about her pending assault charge.

### Harm Analysis

Although we conclude that the evidence concerning Anderson's assault charge was properly excluded, assuming arguendo that the trial court erred in excluding such evidence, we conclude that any such error was harmless.

7

The erroneous exclusion of evidence offered under the rules of evidence generally constitutes non-constitutional error and is reviewed under Rule 44.2(b).[5]  *Walters v. State*, 247 S.W.3d 204, 219 (Tex. Crim. App. 2007).  We must disregard non-constitutional error that does not affect an appellant's substantial rights.  *See* Tex. R. App. P. 44.2(b) ("Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.").  Substantial rights are not affected by the erroneous exclusion of evidence if, after examining the record as a whole, we have a fair assurance that the error did not influence the jury, or had only a slight effect.  *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).  In assessing the likelihood the jury's decision was adversely affected by the error, we consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case.  *Id.*  Additionally, overwhelming evidence of guilt is a factor to be considered in evaluating harm.  *Id.* at 357.

In this case, we have a fair assurance from a review of the record that any error in the exclusion of the complained-of evidence did not influence the jury, or had only a slight effect.  Anderson's testimony indicated that she and O'Brien were intoxicated the night in question and

---

[5]  The improper exclusion of evidence may raise a constitutional violation in two circumstances:  (1) when an evidentiary rule categorically and arbitrarily prohibits the defendant from offering relevant evidence that is vital to his defense; or (2) when a trial court erroneously excludes evidence that is vital to the case, and the exclusion precludes the defendant from presenting a defense.  *Ray v. State*, 178 S.W.3d 833, 835 (Tex. Crim. App. 2005).  Neither of those circumstances is present here.  *See also Wiley v. State*, 74 S.W.3d 399, 405 (Tex. Crim. App. 2002) (erroneous evidentiary rulings rarely rise to level of denying fundamental constitutional right to present meaningful defense).

confirmed that they had an argument over the course of several hours that involved physical altercations during which both engaged in mutually assaultive behavior against each other. She also described O'Brien's restraint on her. During his testimony at trial, O'Brien admitted that he restrained Anderson and explained, in detail, how he restrained her. The physical evidence and photographs corroborated their accounts of the restraint. Although O'Brien asserted that his actions were necessary to prevent her from driving in her intoxicated state and to protect himself from her physical attacks against him, this testimony simply creates a conflict in the evidence, and we find no flaw in the jury's resolution of this conflict against O'Brien.[6] *See Jackson*, 443 U.S. at 326.

The evidence supporting the jury's finding that O'Brien unlawfully restrained Anderson—including the testimony of the officers who arrived on the scene and found Anderson bound on the garage floor, the photographs depicting Anderson bound in the flex cuffs, the police audio recordings of Anderson screaming when the police arrived, the items the police recovered that O'Brien used to secure Anderson, the photographs showing the injuries Anderson suffered from the restraints, and O'Brien's admissions that he restrained Anderson both to the police that night and in his testimony at trial—was overwhelming. We therefore hold that any error in excluding the evidence of Anderson's assault charge was harmless.

For the above reasons, we overrule O'Brien's sole point of error.

---

[6] Based on these assertions in O'Brien's testimony, the trial court instructed the jury on the justification defense of necessity in the court's jury charge. *See* Tex. Penal Code Ann. § 9.22 (West 2011). With its finding of guilty, the jury rejected this defense.

## CONCLUSION

We hold that the trial court did not abuse its discretion in excluding the complained-of evidence of Anderson's subsequent pending assault charge.  We further hold that any error in the exclusion of such evidence was harmless.  Accordingly, we affirm the judgment of conviction.

 

_____

Melissa Goodwin, Justice

Before Justices Puryear, Goodwin and Field

Affirmed

Filed:   January 31, 2013

Do Not Publish

10