

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-13-00807-CR

Marlo Edmundo **MUJICA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 175th Judicial District Court, Bexar County, Texas
Trial Court No. 2011CR2756
Honorable Mary D. Román, Judge Presiding

Opinion by:    Sandee Bryan Marion, Chief Justice

Sitting:    Sandee Bryan Marion, Chief Justice
Rebeca C. Martinez, Justice
Patricia O. Alvarez, Justice

Delivered and Filed:  February 11, 2015

AFFIRMED

Marlo Edmundo Mujica was convicted by a jury of two counts of indecency with a child by contact and one count of aggravated sexual assault of a child.  On appeal, Mujica contends the trial court deprived him of his constitutional right to present a defense by excluding his testimony and a videotape of a meeting he had with the complainant's mother after the complainant's outcry.  We overrule Mujica's contention and affirm the trial court's judgment.

## BACKGROUND

A.G. is the complainant in this case, and her father, J.G., was the first witness called to testify at trial. Based on information he received from a relative of A.G.'s mother, J.G. testified he questioned A.G. in 2008 about whether she had been sexually abused by Mujica, her step-grandfather. J.G. recorded the conversation. A.G. told J.G. that Mujica would show her sexual movies and magazines. A.G. also told J.G. that Mujica would force her to touch his private area, and he would also touch her. A.G. was ten when J.G. questioned her, and A.G. stated the abuse began when she was three or four. A.G. said she never told anyone about the abuse because Mujica threatened to kill J.G., her mother, and her brother.

After this outcry by A.G., J.G. and A.G.'s mother, S.E.G., took A.G. to the police station to make a report and scheduled a forensic interview for A.G. J.G. testified the police department was slow to process the charges because a detective was promoted around that time. J.G. and S.E.G. separated around the time of the outcry and were divorced and engaged in a custody dispute involving A.G. at the time of the trial in 2013.

J.G. also testified about a prior outcry A.G. made in 2001 when she was three. In that outcry, A.G. stated Mujica had touched her. After that outcry, J.G. took A.G. to be examined, but the case was closed because A.G. was unable to provide a statement to the authorities. Despite the outcry and despite the fact that A.G.'s grandmother continued to live with Mujica, J.G. testified he allowed A.G. to begin visiting her grandmother about a year or two after this first outcry because S.E.G. wanted A.G. to have a relationship with her mother. S.E.G. and her mother assured J.G. that Mujica would not be present on the occasions A.G. visited or that A.G. would be carefully watched if Mujica was present.

On cross-examination, J.G. denied browbeating A.G. during his questioning, but he admitted telling her that he would allow her to shave her legs if she told him what happened. J.G. admitted he questioned A.G. for about an hour and a half.

At the time of trial, A.G. was fifteen. She testified Mujica would touch her and drew a stick figure to show that Mujica touched her genital area. A.G. also testified Mujica's fingers would go inside her body. She further testified Mujica would make her touch his penis. A.G. stated this occurred on numerous occasions and that Mujica also made her watch nasty movies once or twice. A.G. testified Mujica told her he would hurt her, her mom, and her grandma if she ever said anything. A.G. stated the abuse started when she was three and ended after she spoke with the police in 2008.

Caroline Briones conducted the forensic interview with A.G. Briones testified she did not believe A.G. was coached into making the outcry. Dr. Nancy Kellogg conducted A.G.'s sexual assault examination. A.G. told Dr. Kellogg that Mujica began abusing her when she was three and that Mujica touched her private part and made A.G. touch his private part. Dr. Kellogg testified that A.G.'s physical examination was normal which is common in children evaluated for sexual abuse. Dr. Kellogg also testified that delayed outcry of sexual abuse is common in children, and she did not believe A.G. was coached.

After the State rested, defense counsel made his opening statement. During his opening statement, defense counsel informed the jury that Mujica had been charged with indecency with a child and aggravated sexual assault involving his three stepdaughters in 1997 and 1998, but he was acquitted of the charges by a jury. Mujica was then called to testify.

Mujica testified that the prior charges against him were brought when he married A.G.'s grandmother, and her ex-husband claimed that he sexually molested his three stepdaughters. Mujica also testified that he spoke with child protective services in 2001 when A.G. was three, and

they determined there was no evidence that A.G. was sexually molested. Mujica testified that as a precaution because of the past allegations, he was never alone with A.G. Mujica denied ever touching A.G. and denied having any pornographic movies or magazines. After A.G. made the allegations against Mujica in 2008, Mujica testified that S.E.G. and her sisters continued seeing him and attending family gatherings. Mujica further testified that he met with S.E.G. in 2010.

On cross-examination, Mujica admitted his stepdaughters did not testify at his previous trial. Mujica also admitted his stepdaughters' allegations were not ruled out by child protective services. Mujica believed A.G. was testifying about the allegations because A.G. was afraid J.G. would take her away from S.E.G. in their custody dispute if she did not.

On rebuttal, a portion of the recording of J.G.'s questioning of A.G. was played for the jury, and the trial court instructed the jury that the recording was being played so the jury could decide "whether or not this child was harassed, forced, coerced, or whatever you want to call it, she was badgered into making these charges." The State also called A.G.'s cousin, D.L., to testify. D.L. testified Mujica also made her touch his penis on numerous occasions starting when she was around six. D.L. also testified Mujica would touch her genitals.

S.E.G. was called as the next rebuttal witness. S.E.G. testified Mujica made her touch his penis when she was ten. She stated Mujica would walk in while she was showering and look at her. S.E.G. further stated Mujica had intercourse with her when she was twelve or thirteen. S.E.G. testified she was told she did not have to testify at Mujica's prior trial and was made to feel guilty about telling on Mujica. S.E.G. testified she allowed A.G. to be around Mujica because she just wanted a normal family, wanted A.G. to know her grandmother, and was assured Mujica would not be left with A.G.

On cross-examination, S.E.G. stated she would take A.G. to her mother's home where Mujica was living even after A.G.'s 2001 outcry. S.E.G. also stated she continued to go to her

mother's home to visit after A.G.'s 2008 outcry. S.E.G. admitted she went to visit Mujica in November of 2010 while he was staying at a hotel. She testified Mujica gave her money because he felt guilty. S.E.G. stated she listened to what Mujica had to say when she visited and thanked him for the money, but she was still angry and believed Mujica owed her.

S.E.G.'s sister, C.E., also testified as a rebuttal witness. C.E. testified she did not want to testify at Mujica's first trial because she was scared and did not want to hurt anyone. C.E. testified Mujica exposed his penis to her.

After hearing the testimony, the jury convicted Mujica of the charges, and he appeals.

## DISCUSSION

The sole issue raised on appeal is whether the trial court deprived Mujica of his constitutional right to present a defense by excluding his testimony about the details of the 2010 meeting he had with S.E.G. and a videotape of that meeting. After Mujica testified that he met with S.E.G. in 2010, the State asserted a relevance objection to defense counsel's next question about the location of the meeting. Defense counsel argued that the details of the meeting assisted in proving the falsity of the allegations because S.E.G. would not continue to meet with Mujica if she and her daughter had been sexually molested by him. The State responded that Mujica was not an expert on the reasons S.E.G. would continue to meet with him, and his testimony about S.E.G.'s reasons would be speculation and, therefore, not relevant. The trial court sustained the objection.

During a break in the trial, defense counsel made an offer of proof of the videotape Mujica had taken of the meeting. Defense counsel asserted that the videotape showed S.E.G. having a pleasant conversation with Mujica. Defense counsel again argued that S.E.C.'s actions were inconsistent with her allegations that Mujica sexual molested her and A.G. because "[w]hy would somebody in that position ever come and discuss anything with the alleged perpetrator."

A.      Constitutional or Non-Constitutional Error

Assuming without deciding that the trial court erred in excluding the evidence in question, we must decide if the error resulted in a constitutional violation. "A defendant has a fundamental right to present evidence of a defense as long as the evidence is relevant and is not excluded by an established evidentiary rule." *Miller v. State*, 36 S.W.3d 503, 507 (Tex. Crim. App. 2001). An erroneous ruling excluding evidence is generally considered non-constitutional error. *Walters v. State*, 247 S.W.3d 204, 219 (Tex. Crim. App. 2007). The exclusion of evidence may, however, rise to the level of a constitutional violation if the "trial court's clearly erroneous ruling results in the exclusion of admissible evidence that forms the vital core of a defendant's theory of defense and effectively prevents him from presenting that defense." *Id.* If the exclusion of the testimony does not prevent the defendant from effectively presenting his defense and would only "have incrementally furthered [the defendant's] defensive theory," the erroneous exclusion of the testimony would not rise to the level of a constitutional violation. *Ray v. State*, 178 S.W.3d 833, 836 (Tex. Crim. App. 2005); *see also Walters*, 247 S.W.3d at 222.

In this case, both Mujica and S.E.G. testified that S.E.G. met with Mujica in 2010. Mujica further testified that S.E.G. and her sisters continued to attend family gatherings after A.G.'s outcry in 2008. This testimony was evidence in support of Mujica's defense that A.G.'s allegations were untrue because S.E.G. would not have continued to visit him if the allegations were true. Accordingly, further evidence of the details of S.E.G.'s 2010 meeting with Mujica, and evidence of her demeanor at that meeting, would only have "incrementally furthered" Mujica's defensive theory. Therefore, the exclusion of the evidence in question did not rise to the level of a constitutional violation.

B.      Harm

"When evaluating harm from non-constitutional error flowing from the exclusion of relevant evidence, we examine the record as a whole, and if we are fairly assured that the error did not influence the jury or had but a slight effect, we conclude that the error was harmless." *Ray*, 178 S.W.3d at 836.

In his defense at trial, Mujica sought to establish that A.G.'s allegations against him were untrue because parents would not allow their child to visit with a person who sexually molested them or their child. Mujica elicited testimony from several witnesses that A.G. was allowed to visit in his home since her birth, A.G. was allowed to continue to visit after her 2001 outcry, and S.E.G. continued to visit with Mujica even after A.G.'s 2008 outcry. In addition to this evidence, however, the jury also was presented with A.G.'s testimony about the abuse, and her description of the abuse to both J.G. and Dr. Kellogg. Despite Mujica's efforts to convince the jury that J.G. coerced A.G. into making the allegations, both Briones and Dr. Kellogg testified that A.G. was not coached. In addition, although Mujica relied on his acquittal of similar charges against his stepdaughters, evidence was presented that his stepdaughters did not testify at his prior trial, and S.E.G. and another stepdaughter testified during the trial in the instant case that Mujica had sexually abused them. Having reviewed the record as a whole, we are fairly assured that the exclusion of the evidence in question had no influence on the jury. *See id*.

## CONCLUSION

The trial court's judgment is affirmed.

Sandee Bryan Marion, Chief Justice

DO NOT PUBLISH