**Affirmed and Memorandum Opinion filed June 30, 2016.**



**In The**

# Fourteenth Court of Appeals

---

### NO. 14-14-00796-CR

---

### DAVID MICHAEL WATSON, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 400th District Court
Fort Bend County, Texas
Trial Court Cause No. 12-DCR-059381**

---

## M E M O R A N D U M   O P I N I O N

Appellant was charged by indictment with one count of indecency with a child by contact. *See* Act of June 13, 2001, 77th Leg., R.S., ch. 739, § 3, 2001 Tex. Gen. Laws 1463, 1464 (current version at Tex. Penal Code Ann. § 21.11 (West 2015)). The jury found appellant guilty and assessed punishment at ten years' confinement and a fine of two thousand dollars. In his sole issue on appeal, appellant contends the trial court abused its discretion when it limited the scope of appellant's proffered expert testimony during the guilt/innocence phase of trial. We affirm.

# I.  FACTUAL AND PROCEDURAL BACKGROUND

Appellant was accused of touching his granddaughter's genitals with his hand. Appellant's granddaughter, the complainant, testified "when [appellant] came down to visit or when we went to visit," appellant touched her "under the clothes, but over my panties." She testified that she would sit on appellant's lap when she was "[n]ine, ten, eight, somewhere around there" and he would touch "my vagina." The complainant was thirteen at the time of her outcry and sixteen at the time of trial.

During the guilt/innocence phase of trial, appellant sought to introduce the testimony of Dr. Jerome Brown, a clinical psychologist, regarding (1) the phenomenon of "confabulation,"[1] (2) the general nature of memory deterioration over time, and (3) the likely behavioral manifestations of a child who has been sexually abused. The State objected. The trial court held a hearing outside the presence of the jury to determine the admissibility of Dr. Brown's proffered testimony. During the hearing, Dr. Brown testified that he is a clinical psychologist and that he "had worked with hundreds of sex offenders and victims [since 1982]." The State and appellant then took turns questioning Dr. Brown about his expertise and the scientific principles subject to his testimony. At the conclusion of the hearing, the trial court accepted Dr. Brown as a qualified psychologist, allowed Dr. Brown to give expert testimony on confabulation, but excluded his testimony regarding memory deterioration and the likely behavioral manifestations in a sexually abused child.

As noted above, the jury found appellant guilty and sentenced him to a term of ten years' confinement and assessed a two thousand dollar fine.

---

[1] According to Dr. Brown, "[c]onfabulation is a disturbance of memory. It involves the creation and insertion into a past memory of new material, of material that actually didn't exist or didn't occur at the time of the original memory but becomes part of the person's memory of what happened. . . This is not like lying or misperceiving something, but the person actually believes and has a memory about something that happened that didn't really occur."

## II. ANALYSIS

In his sole issue on appeal, appellant argues the trial court erred in limiting the scope of his expert's testimony to confabulation. Specifically, appellant contends Dr. Brown's proffered testimony about memory deterioration and behavioral manifestations in sexually abused children was both relevant and reliable.

Assuming, without deciding, the trial court abused its discretion in excluding Dr. Brown's testimony regarding general memory deterioration and likely behavioral manifestations in sexually abused children, we conclude appellant did not suffer harm. In a criminal case, harm is evaluated under Texas Rule of Appellate Procedure 44.2. Rule 44.2(a) addresses constitutional error while Rule 44.2(b) addresses non-constitutional error. *See* Tex. R. App. P. 44.2(a), (b).

The erroneous exclusion of evidence in violation of the Texas Rules of Evidence generally is non-constitutional error and is reviewed under Rule 44.2(b). *See Tillman v. State*, 376 S.W.3d 188, 198 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (citing *Walters v. State*, 247 S.W.3d 204, 219 (Tex. Crim. App. 2007)). However, improper exclusion of evidence may establish a constitutional violation in two circumstances: (1) when a state evidentiary rule categorically and arbitrarily prohibits the defendant from offering relevant evidence that is vital to his defense; or (2) when a trial court erroneously excludes relevant evidence that is a vital portion of the case and the exclusion effectively precludes the defendant from presenting a defense. *Id.* at 198.

The trial court's exclusion of the evidence in this case was not grounded on any evidentiary rule prohibiting the admission of the testimony appellant offered. Therefore, we are concerned only with the second category and must determine whether the exclusion of the evidence effectively prevented appellant from presenting

a meaningful defense. *See Ray v. State*, 178 S.W.3d 833, 835 (Tex. Crim. App. 2005) (citing *Potier v. State*, 68 S.W.3d 657, 665 (Tex. Crim. App. 2002)).

## 1. Memory Deterioration

### a. The Error Is Not Constitutional

Erroneous evidentiary rulings rarely rise to the level of denying a fundamental constitutional right to present a meaningful defense. *Wiley v. State*, 74 S.W.3d 399, 405 (Tex. Crim. App. 2002) (citing *Potier*, 68 S.W.3d at 663). Appellant did not argue in his brief that the exclusion of Dr. Brown's testimony effectively precluded appellant from presenting a meaningful defense. However, even assuming the excluded evidence was meant to further appellant's defensive theory that the complainant was misremembering certain events, we conclude appellant was not effectively prevented from presenting his defense.

First, through his own testimony, appellant was able to present to the jury that he did not touch the complainant inappropriately. He gave his own account of the facts. Appellant admitted that his grandchildren often sat on his leg, but denied ever touching the complainant inappropriately. The jury, as the judge of credibility, was entitled to believe or disbelieve any inconsistencies in the evidence. *See Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

Second, appellant was able to challenge the reliability of the complainant's memory and testimony through cross-examination. *See Tillman*, 376 S.W.3d at 198–99 (because appellant was able to challenge reliability of police identification procedures through cross-examination of eyewitnesses and officer, and attacked their reliability during closing argument, he was not effectively prevented from presenting his defense when the trial court excluded his expert witness). Therefore, we conclude that the excluded evidence would have furthered appellant's defensive theory regarding the complainant's memory only incrementally. *See Walters*, 247 S.W.3d at

4

222; *see also Ray*, 178 S.W.3d at 836. For example, during appellant's cross-examination of the complainant, he challenged the reliability of her memory:

> Q: Okay. Let's talk about the way you remember things. Have you ever made a mistake remembering something, thought about something one way, but then later you found out that it didn't happen quite that way?
>
> A: Yes.
>
> Q: Can you give me a real example about that?
>
> A: Like when I thought [the inappropriate touching] was on the long couch when it was actually on the short one.
>
> Q: Okay. We didn't have to talk about this, but I suppose that would be an example. Anything else?
>
> A: Not that I remember.
>
> Q: That's the first time that's ever happened, that you remember?
>
> A: No, it's not the first. It's just I don't remember.

Additionally, appellant challenged the reliability of the complainant's memory during closing argument. He argued the complainant's story "changed dramatically" and had "mass inconsistencies."

Where the excluded evidence would only further the defendant's defensive theory incrementally, the error is not of a constitutional dimension. *Walters*, 247 S.W.3d at 222; *Ray*, 178 S.W.3d at 836. Therefore, the alleged error in excluding Dr. Brown's testimony on this point was not constitutional, and the harm analysis is governed by Rule 44.2(b). *See Tillman*, 376 S.W.3d at 199.

### b. Appellant was not harmed

Next, we consider whether the trial court's alleged error in excluding the memory deterioration evidence harmed appellant. A non-constitutional error that does not affect substantial rights does not justify overturning the verdict. *Potier*, 68 S.W.3d at 666. A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *Coble v. State*, 330 S.W.3d 253, 280 (Tex. Crim. App. 2010). However, such non-constitutional error is harmless when the improperly admitted evidence did not influence the jury or had but a slight effect upon its deliberations. *Id.* In performing a harm analysis, we examine the entire trial record and calculate, as much as possible, the probable impact of the error upon the rest of the evidence. *Id.* We consider the overwhelming evidence supporting the particular issue to which the erroneously admitted evidence was directed. *Id.; Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000). In doing so, we consider "everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case." *Motilla v. State*, 78 S.W.3d 352, 357 (Tex. Crim. App. 2002) (quoting *Morales*, 32 S.W.3d at 867).

Appellant's substantial rights were not affected by the exclusion of the evidence regarding memory deterioration. Dr. Brown was able to testify regarding confabulation. The jury heard him explain that confabulation is a disturbance of memory that involves the creation and insertion into a past memory of new material that did not exist or occur at the time of the original memory. Instead, as Dr. Brown explained, the new material becomes part of the person's memory of what happened. The jury also heard Dr. Brown highlight some of the adverse influences of leading and repeated questions and pressure that could lead to memory distortion.

6

Q: Can certain events external to a person cause a person to have false memories?

A: Yes.

Q: How does that work?

A: Well, there are several types of what we call adverse influences, adverse meaning influences that would distort or change the original memory. Suggestibility of suggestive situations is one type . . . Other types of adverse influence would be like leading questions, repeated questions, pressure-type situations that make - - that lead the person to feel some kind of pressure to create a new kind of memory, either to please the person questioning them or some other reason, or to bolster what they have reported in the past.

. . .

Q: In the general population, and particularly in the population of children, does confabulation occur unaccompanied by other symptoms of mental illness?

A: Yes. Sometimes, they are what we call unprovoked or unstim - - unstimulated confabulation, they just happen out of the blue, and sometimes they're in response to some kind of provocation.

Q: What kind of provocation?

A: Well, again, different kind of trauma, different kinds of stress, different kinds of pressure can be put on the person to alter - - that might cause them to alter their memories.

Q: If a person were repeatedly questioned about an event?

A: That can do it.

Q: Okay. If a person were made to tell the same story time after time, could that have an effect?

A: Yes.

Dr. Brown testified that the younger the person is, the more susceptible he or she is to the distortions of memory through adverse influences. The jury was free to consider Dr. Brown's testimony and evaluate any inconsistencies in the complainant's testimony. *See Isassi*, 330 S.W.3d at 638.

7

Based on our review of the record, we conclude that the exclusion of Dr. Brown's testimony on this point did not have a substantial and injurious effect or influence in determining the jury's verdict. *See Tillman*, 376 S.W.3d at 202 (determining after remand that the exclusion of the expert's testimony was harmless error).

**2. Behavioral Manifestations**

For the reasons explained above, we conclude any error in excluding Dr. Brown's proffered testimony regarding the likely behavioral manifestations in sexually abused children is non-constitutional error. Therefore, assuming the trial court erred, we must determine whether such error affected appellant's substantial rights. *See Potier*, 68 S.W.3d at 666.

Dr. Brown would have testified that there are common characteristics or behavioral manifestations in sexually abused children. These characteristics, when present, indicate red flags that a child may have been sexually abused. Among these characteristics are a drop in academic performance, sleep disturbance, preoccupation with sexual behavior, and withdrawal. However, Dr. Brown also conceded that some sexually abused children do not display any of those characteristics or manifestations.

> Q: And you indicated that some of these symptoms or behavioral manifestations could be a drop in academic performance, sleep disturbance, preoccupation with sexual behavior - - I think you mentioned another one.
>
> A: Withdrawal.
>
> Q: Withdrawal. It's also common in children who have been sexually abused not to have any of those symptoms, isn't it?
>
> A: Yes.
>
> . . .
>
> Q: So, the truth is there really is no way to characterize behaviors that are common to all children who have been sexually abused?

A: It can't be used as like a yes or no. It's not that precise.

Q: As you said, your profession tries to educate the public for certain symptoms that might cause concern for further inquiry, but these symptoms that you've listed, if they are present, don't show whether or not a child was sexually abused, do they?

A: Right.

Dr. Brown's proffered testimony regarding behavioral manifestations merely listed several factors that may or may not indicate that a child has been sexually abused. Although both the complainant and her mother testified that the complainant was doing well in school, this fact does not indicate one way or another the likelihood that the complainant was sexually abused. Therefore, we cannot conclude that the exclusion of Dr. Brown's testimony would have had a substantial influence on the jury's verdict.

After reviewing the record as a whole, we have a fair assurance that any improperly excluded evidence did not influence the jury or had but a slight effect upon the verdict. *See Coble*, 330 S.W.3d at 280. Therefore, assuming the trial court erred when it excluded Dr. Brown's testimony regarding memory deterioration and behavioral manifestations in sexually abused children, we conclude the error was harmless. Accordingly, we overrule appellant's sole issue and affirm the trial court's judgment.

/s/     John Donovan
           Justice

Panel consists of Chief Justice Frost and Justices Christopher and Donovan.
Do Not Publish — Tex. R. App. P. 47.2(b).

9