**AFFIRMED and Opinion Filed October 10, 2018**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-17-01162-CR

**BRANDON CHARLES TEMPLE, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 5**
**Dallas County, Texas**
**Trial Court Cause No. F14-34443-L**

## MEMORANDUM OPINION
Before Justices Bridges, Francis, and Lang-Miers
Opinion by Justice Francis

A jury convicted Brandon Charles Temple of murder, and the trial court assessed punishment at forty-five years in prison. In two issues, appellant complains about the admission of extraneous offense evidence and the exclusion of first-aggressor evidence. We affirm.

Appellant shot and killed Christopher Guajardo on a McDonald's restaurant parking lot. Three eyewitnesses testified Guajardo was on his knees in a surrender position immediately before appellant shot him. One of the witnesses, Georgina Leos, was working at McDonald's that night when Guajardo walked up to the drive-thru window and asked for directions to McKinney, Texas. Leos told him McKinney was a forty-five-minute drive and asked him if he had a car. Guajardo told her no. Leos then tried to place two telephone calls for Guajardo, but no one answered. When

a car pulled up in the drive-thru, Guajardo told Leos he would walk to McKinney and left the drive-thru area. Leos said Guajardo was nice, polite, calm, and did not seem aggressive.

A few minutes later, Leos was leaving work and noticed Guajardo talking to a man and woman outside an SUV parked near her car. As Leos was getting into her car, she saw a "scuffle" or "really fast" movement and then saw the man push Guajardo. Guajardo shook his head "no," threw his hands in the air, and got down on his knees. The man opened the back window of the SUV, pulled out a shotgun, and shot Guajardo. The man got into his SUV and drove off. Leos was in shock but took pictures of the fleeing vehicle with her cell phone. After the vehicle left, she went to help Guajardo and called 911. Guajardo died at the scene from a shotgun wound to the torso. The slug damaged multiple organs and ribs as it traveled through his body.

Joel Barbosa was in the drive-thru lane when he saw Guajardo walk up to the SUV, lean against the passenger side of the car, and talk to the man and woman inside. He could not hear the conversation. Shortly after, the couple got out and walked to the back of the car. They were talking to each other and then "just broke apart." Barbosa said he did not see a "fistfight," but the man pushed Guajardo "to get him away from him." Guajardo walked away, and the man opened the back of the SUV and pulled out a shotgun. Barbosa said Guajardo kneeled down on his hands and knees, and the man shot him. Afterwards, the shooter appeared "very calm," threw the shotgun into the back of the vehicle, and "took off real fast." Barbosa said the shooter did not behave as if he were afraid at any time during the interaction. Kiara Rock was also in the drive-thru lane. She looked over and saw a man shoot a second man who was on his knees on the ground "surrendering himself." Rock did not see what happened before the shooting.

Police talked to witnesses at the scene, obtained the photographs that Leos took of the suspect's vehicle, and retrieved videos from McDonald's and an adjacent motel. The videos indicated the time between Guajardo's initial contact with appellant and the murder was less than

–2–

three minutes. Using the videos and photographs of the suspect vehicle, Irving police Detective Adam Mayorga was able to identify the owner of the vehicle as Tyisha Promise, appellant's girlfriend. In addition, a cap found at the scene contained appellant's DNA. Mayorga testified, without objection, that appellant was not "legally able" to possess a firearm outside of his house.

At trial, Promise testified she and appellant and been drinking on the night of the shooting and stopped at McDonald's to get food. They were sitting in her SUV on the parking lot at about 1 a.m. when Guajardo leaned into the passenger-side window where she was seated and asked about "getting to McKinney." Promise said she told Guajardo numerous times that she did not know directions to McKinney, but he continued to ask. Appellant then told Guajardo he could not give him a ride, and Guajardo responded that he was not looking for a "MF'ing ride."

At that point, appellant got out of the car and met Guajardo at the back of the vehicle, where they exchanged words. Promise said appellant was walking back to the driver's door when Guajardo hit him. A fight ensued, and both men threw punches. Guajardo was knocked to the ground and got "right back up." Promise said Guajardo was grabbing his shirt near his waistband, and she believed he was about to "grab something . . . perhaps a gun." Appellant opened the back hatch window, grabbed a shotgun, and shot Guajardo. Unlike the other eyewitnesses, Promise said Guajardo never got on his knees or raised his hands.

After the shooting, she and appellant got in the vehicle and left. Promise said Guajardo seemed "off" and became "real aggressive." She testified she and appellant feared for their safety that night. Promise also testified, without objection, that appellant was not legally allowed to carry a gun outside the house.

In his first issue, appellant complains about the admission of extraneous offense evidence that he was not allowed to possess a firearm. The evidence was adduced during the testimony of Mayorga and Promise, and appellant acknowledges he did not object. Nevertheless, he contends

no objection was required under *Marin v. State*, 851 S.W.2d 275, 279 (Tex. Crim. App. 1993), because his complaint involves either an absolute right or a right that must be implemented by the system unless expressly waived. We disagree.

Since *Marin*, the court of criminal appeals has rejected a claim that the improper admission of evidence falls within one of the limited categories that may be addressed on appeal without proper objection. *See Saldano*, 70 S.W.3d 873, 889 (Tex. Crim. App. 2002). In *Saldano*, the defendant did not object to testimony that concerned his rights under the equal protection clause. After a discussion of *Marin* and the types of cases that may be raised for the first time on appeal, the court concluded the defendant was required to object to the evidence to complain on appeal. *Id.* at 889–90.

Here, appellant's issue concerns the admission of evidence that he was not legally allowed to possess a firearm on the night he shot Guajardo. Because his issue does not fall within one of those categories that may be addressed on appeal without objection, and because appellant failed to object, appellant has not preserved his complaint for review on appeal. *See Saldano*, 70 S.W.3d at 890; *Fields v. State*, No. 03-06-00106-CR, 2009 WL 638180, at *1–2 (Tex. App.—Austin March 12, 2009, pet. ref'd) (mem. op.) (concluding admission of extraneous offense evidence not fundamental error and failure to object waived review); *Love v. State*, No. 13-01-00342-CR, 2002 WL 34230836, at *1 (Tex. App.—Corpus Christi July 3, 2002, pet. ref'd) (mem. op.) (same). We overrule the first issue.

In his second issue, appellant complains the trial court erred by excluding evidence of Guajardo's juvenile convictions for assault and resisting arrest in 2000 and 2002. He contends the evidence was relevant to show Guajardo was the first aggressor and argues its exclusion impacted his claim of self-defense. Assuming without deciding the evidence was relevant to show Guajardo was the first aggressor, we conclude its exclusion was harmless.

–4–

When evaluating harm from non-constitutional error flowing from the exclusion of relevant evidence, we examine the record as a whole, and if we are fairly assured the error did not influence the jury or had but a slight effect, we conclude the error was harmless. *Ray v. State*, 178 S.W.3d 833, 836 (Tex. Crim. App. 2005).

Although the trial court excluded evidence of fifteen- and seventeen-year-old juvenile convictions as first-aggressor evidence, the court did allow appellant to admit a December 2010 psychological assessment of Guajardo. The assessment noted, in part, the following:

> [Appellant] is seeking services due to persistence of sxs [sic] and "bad thoughts." [Appellant] reports that thoughts of harming others "pop up" in his head at random times. [Appellant] says he has various plans of harming others (no weapons or organization of plan) however he denies any intent, and states these thoughts have occurred for yrs. [Appellant] denies thoughts of harming his children or loved ones, and instead says thoughts are about strangers.

Thus, during its deliberations, the jury had before it evidence that Guajardo had thoughts of harming strangers that, given the factual allegations in this case, was more compelling to his self-defense theory than the much older juvenile convictions for assault and resisting arrest. Having examined the record as a whole, we are fairly assured that evidence of the juvenile convictions would have had only slight effect on the jury and its exclusion was therefore harmless. We overrule the second issue.

We affirm the trial court's judgment.

/Molly Francis/
MOLLY FRANCIS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
171162F.U05

–5–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

BRANDON CHARLES TEMPLE,
Appellant

No. 05-17-01162-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 5, Dallas County, Texas
Trial Court Cause No. F14-34443-L.
Opinion delivered by Justice Francis;
Justices Bridges and Lang-Miers
participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered October 10, 2018.